# MARYLAND INDEMNITY INSURANCE CO. *v.* WILLIAM T. KORNKE, SR. ET AL.

[No. 594, September Term, 1973.]

*Decided May 17, 1974.*

The cause was argued before THOMPSON, MOORE and LOWE, JJ.

*Matthew Swerdloff,* with whom were *Swerdloff, Rabineau & Murphy* on the brief, for appellant.

*Robert E. Cadigan,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

We are here confronted with a "clear-cut set of facts"[1] requiring a decision as to whether the coverage afforded by the omnibus clause of an automobile liability insurance policy extends to the "second permittee" — the driver of the insured vehicle as distinguished from the borrower or "first permittee" — and under circumstances where the insured owner restricted the operation of his car to the first permittee but the latter was a passenger at the time of the accident.

The issue was presented to the trial court (Jenifer, J.) upon a stipulation of facts and the deposition of the first permittee, in a suit for declaratory judgment wherein Maryland Indemnity Insurance Company ("Maryland Indemnity") sought in effect a determination that Nationwide Mutual Insurance Company ("Nationwide") — and not Maryland Indemnity — was required to provide coverage and a defense to the second permittee in two separate personal injury actions filed in the Circuit Court for Baltimore County, on behalf of the first permittee and another passenger, respectively. Nationwide had issued a policy to the father of the second permittee and the latter

---

1. Finan, J., writing for the Court of Appeals, in Zurich Co. v. Monarch Co., 247 Md. 3, 230 A. 2d 330 (1967) where the Court found it unnecessary to decide the "second permittee" issue on facts there presented.

was covered by a so-called JR-11 endorsement to her father's policy.[2] In a carefully considered written opinion, the trial judge held that Maryland Indemnity was the primary insurer. We affirm.

The so-called "omnibus clause," required by statute in a number of states,[3] is in addition to the general insuring clause and extends the protection of the automobile liability insurance policy to any person using the insured vehicle provided the use (or "actual use")[4] is by the named insured or with his permission or consent. The clause, irrespective of language variations, clothes the named insured with broad authority to constitute other persons as "additional insureds."

The Maryland Indemnity omnibus clause at issue in this case contains fairly standard provisions and reads as follows:

> "Definition of Insured. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the

2. The Nationwide policy contained an "Other Insurance" clause which expressly made the non-owned vehicle coverage "excess insurance" over any other valid and collectible insurance. While the Maryland Indemnity policy also included an "Other Insurance" clause, it was the prorated type, providing for apportionment of losses between available insurance, and it is settled that within the meaning of such a clause an excess insurance clause is not "Other Insurance." Zurich Insurance Co. v. Continental Casualty Company, 239 Md. 421, 212 A. 2d 96 (1965). Accordingly, the liability *vel non* of Nationwide under its policy to the second permittee's father is not the issue in this appeal.

3. At the time of the events in this case only Md. Code, Art. 66½, § 131 required an automobile liability insurance policy offered as proof of financial responsibility to contain an omnibus clause. Kornke, Sr., however, did not fall within those required by the statute to furnish such a policy, Art. 66½, §§ 116-122. In Mt. Beacon Insurance Company v. Williams, *infra*, however, Chief Judge Thomsen of the United States District Court was of the view that in practice "the Insurance Commissioner will not approve any insurance policy insuring an automobile unless such policy contains an omnibus clause satisfactory to the Commissioner."

4. ". . . [I]t appears that the courts ordinarily have not regarded that term, as distinguished from the word 'use,' as being one of special significance." Annotation: "Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person Who is Using Car With Consent of Permittee of Named Insured." *4* A.L.R.3d, pp. 10-133, at 29. *See also* Maryland Casualty Co. v. Marshbank, 226 F. 2d 637 (3rd Cir. 1955).

named insured is an individual, his spouse if a resident of the same household, *and also includes any person while using the automobile* and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.*" (Emphasis added.)

With respect to the "simple words, perhaps too simple, 'actual use . . . with the permission of,'" the Court of Appeals has at least twice recorded its agreement with the observation of a dissenting judge in a 1960 New Jersey case [5] that these words

". . . have engendered probably as much reported litigation as any common contractual phrase. The absence of any express definition of the key words, either legislatively or within the instrument, coupled with the infinite variety of factual situations arising, has resulted in the widest conceivable range of judicial approach, reasoning and result."

Appellant's principal contention is that the trial court erred in determining that at the time of the accident in question the "actual use" of the automobile was by the named insured (William T. Kornke, Sr.) or with his permission, or, as alternatively stated, the court erred in its determination that Kornke, Sr. "had, in fact, given to his son permission to operate the vehicle for the use as established by the facts.[6]

The facts are uncomplicated and substantially undisputed. They present the familiar picture of an 18 year old high

---

5. Matits v. Nationwide Mutual Insurance Company, 166 A. 2d 345, 350 (N.J. 1960). *See* American Home Assurance Co. v. Erie Insurance Exchange, et al., *infra*, at 120; Cohen, Adm'r v. American Home Assurance Co., *infra*, at 343.

6. Appellant also challenges the court's holding that "an emergency situation had been created and, under such circumstances, permission on the part of the father should be implied." In the view we take of the case, however, it is not necessary for us to decide that issue.

school student, William T. Kornke, Jr., living at home with his parents in Baltimore County in June, 1968. He enjoyed permission to drive his father's car, a 1960 Chevrolet hardtop, for purposes of going to "school and work, mostly," and for those purposes drove the car "almost every day." On these occasions he was not required to ask his father's permission to drive the car but rather "it was agreed that it was my responsibility." When, however, he wanted to use the car for a date or other social purpose the case was somewhat different; then "I always had to tell him that I was going out." This was, in effect, asking permission:

". . . I like asked that permission when I said, I am going out; that was like asking can I have the car also.
Q. Your father knew what you meant by that?
A. Yes. . . . If he didn't want me to use it, he would say, well, don't take the car."

At the same time, William was under explicit instructions not to allow anyone else to drive the father's car. When he had first obtained his license his father had "made it clear like it was a law, a rule." Thereafter, "along the way, ever so often he would mention that, you know, never let anybody drive your car," meaning in the present context, the father's car.

On the evening of June 22, 1968 William had invited friends, about 15 people, home for crabs and beer. At about midnight the group decided to ride out to Billingslee Farm in Harford County and "build a campfire near the river and sit around." William told his father that he was going out and the group set out in two other cars and the Kornke Chevrolet which had four occupants including William's date, Sue Peters, and her close friend, Lynanne Hampshire.[7] With William driving his father's car they drove north. When they were about equidistant between their destination and the Kornke home the car began to misfire. William had had similar trouble before with the car and each time would stop

7. At the time of William's deposition, January 27, 1972, William and Sue were married and Lynanne was a registered nurse.

and fix it, which involved essentially reattaching wires that had come loose from the top of the distributor. While attempting to replace one wire, however, he inadvertently touched the uninsulated portion of another and received an electric shock. He explained the effect:

"A. Well, I wasn't wearing any shoes and I was grounded right against the pavement and it knocked me back, knocked me from under the car. . . . the engine was running . . . it knocked me back and numbed me pretty well, numbed my right hand and arm, and I decided . . . let me see . . . I was tired, also, because I was working quite a bit the past two weeks before that, and I just — my right arm and hand, I just couldn't move them."

Since "it was kind of taken for granted that we were headed out there, out still further, and we had a ways to go, we were only halfway there," the question arose as to who would drive. William was "like ushered into the front seat." He did not ask anyone else to drive but "just mentioned that my arm was sore and I probably couldn't drive. . . . It wouldn't be safe." He conceded that if no one had volunteered to drive, "[w]e could have just sat there until my arm got okay and then taken off again." Lynanne Hampshire offered to drive, however, and when evidently there was no objection, she took over the wheel. For William's part, "as soon as I was in the seat and my head was down . . . it was no time before my eyes were closed and I was asleep." He was still asleep when the car struck a bridge abutment while Lynanne was driving.

Upon these facts the trial court could readily conclude that 1) William Kornke, Jr. received permission from his father on the evening of June 22 to use the father's car for a social purpose; and 2) Kornke, Jr., in turn, consented to the operation of the car by Lynanne Hampshire for the continuation of the trip to the Billingslee Farm when, in his opinion, he became temporarily unable to drive. The question for decision, therefore, is whether in these

circumstances the use of the car continued, until the time of the accident, with the permission of Kornke, Sr., and the effect of the express prohibition, repeatedly communicated by father to son, against allowing anyone else to drive.

In 1965, then U. S. District Judge Harrison L. Winter observed that "there is no direct decision of the Maryland Court of Appeals deciding whether, or under what circumstances, a second permittee becomes an insured under an omnibus clause. . . ." *Ohio Casualty Ins. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 238 F. Supp. 706 (D.C.D. Md. 1965), *aff'd per curiam*, 352 F. 2d 308 (4th Cir. 1965).[8] This remains true today. A review of applicable Maryland cases, however, points the way to the proper resolution of the issue upon the facts in this case.

Immediate guidance, in terms of the meaning of "actual use" as employed in the omnibus clause, is presented in the cases of *Hardware Mutual Casualty v. Mitnick*, 180 Md. 604, 26 A. 2d 393 (1942) and *Melvin v. American Automobile Insurance Company*, 232 Md. 476, 194 A. 2d 269 (1963), neither of which, however, involved the question of coverage *vel non* of a second permittee. *Mitnick* involved essentially the same omnibus clause as in this case. The named insured owner kept the car for the use of his granddaughter and her mother and the granddaughter regularly kept the key and did all the driving. At issue in the case was whether coverage under the omnibus clause extended to the granddaughter (first permittee) in circumstances where the accident occurred while she was a passenger in the car as it was being driven by another person with her permission. There was no evidence that the owner "knew of Harrison's (second permittee) driving the car, or had consented to it; on the contrary, the only testimony on the point was that he had instructed his granddaughter to let nobody but herself drive it."

---

8. Judge Winter, now associate judge of the U. S. Court of Appeals, Fourth Circuit, made an "informed prediction" that on the facts there present the Court of Appeals of Maryland would extend the coverage of the omnibus clause to the second permittee. Other later decisions of the U. S. District for Maryland making similar predictions include Mt. Beacon Insurance Company v. Williams, *infra*, and Travelers Corporation v. Kaminski, *infra*.

The violation of this prohibition, however, was apparently not urged by the insurer as grounds for the denial of coverage. Instead it limited its defense to the contention that permitted "use" under the omnibus clause referred solely to the act of driving the car and not to taking it out while it was being driven by another. Chief Judge Bond, writing for the Court, rejected this contention, holding that using includes riding while another drives:

> "But using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another. Mrs. Phillips [the granddaughter] was 'still the director of the enterprise, still the custodian of the instrumentality confided to [her] keeping, still the master of the ship.' *Grant v. Knepper,* 245 N. Y. 158, 165, 156 N. E. 650, 652, 54 A.L.R. 845; *Arcara v. Moresse,* 258 N. Y. 211, 179 N. E. 389; *Johnson v. O'Lalor,* 279 Mass. 10, 180 N. E. 525. And *see Appleman Automobile Liability Insurance,* 1938 Ed., p. 107 and cases cited."

In *Melvin v. American Automobile Insurance Company, supra,* it was also argued by an insurer that the actual use of the car was by the driver and not the passenger, the owner's son, who had become tired and asked his friend to drive. The Court of Appeals (Judge Henderson, later Chief Judge, speaking for the Court) again rejected this contention, holding that the "actual use" at the time of the accident was by and for the benefit of the son:

> "We see no reason to limit the meaning of the words 'actual use' to the operation of a vehicle, where the operator is the agent or servant of another and subject to this immediate and present direction and control. There appears to be no case that has construed the words in the context of this policy, but there are cases in which the word 'use' has been so construed. In *Casualty Co. v. Mitnick,* 180 Md. 604, 607, Chief Judge Bond, for this Court, said that 'using a car in the ordinary acceptation of

the words seems clearly to include a borrower's making use of it by riding while driven by another.' *See also Arcara v. Moresse,* 258 N. Y. 211; 179 N. E. 389; *Brown v. Kennedy,* 48 N.E.2d 857 (Ohio); *Maryland Casualty Company v. Marshbank,* 226 F. 2d 637, 639 (C.A.3d); *Osborne v. Security Insurance Company,* 318 P. 2d 94, 99 (Cal. App.) and *Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of N.Y.,* 166 A. 2d 355 (N.J.). These cases also indicate that 'actual use' means the particular use contemplated when permission is granted and relied on."

In *Melvin* the omnibus clause differed from that in *Mitnick* (and in the instant case) in extending coverage in the first instance to

". . . (1) the named insured and any resident of the same household. . . ."

Thus, the son "was covered as a resident of his father's household, and did not need to rely upon the permission granted" for his authority to permit another to drive. This distinguished the case, the Court found, from those relied on by the insurer (citing 7 Appleman, *Insurance Law and Practice,* § 4354) in which the policies granted coverage only to persons using the vehicle with the permission of the named insured and where "coverage depends . . . upon the scope of the permission granted." In *Melvin,* the Court said "the test is use rather than permission," and quoted with approval Appleman's definition of actual use":

"The term 'actual use' refers to the actual employment of the vehicle at the time of the accident, *rather than to the identity of the operator at such time."* (Emphasis added.)

The Court commented: "Thus, so far as the meaning of the words is concerned, the author would seem to agree that use and operation are not synonymous." 232 Md. at 480.

After *Melvin* in 1963, in a procession of cases before the Court of Appeals involving the omnibus clause, three of

them in 1969, the results turned upon the Court's interpretation of "permission" rather than "use." *Zurich Co. v. Monarch Co.,* 247 Md. 3, *supra; American Home Assurance Co. v. Erie Insurance Exchange, et al.,* 252 Md. 116, 248 A. 2d 887 (1969); *Cohen, Adm'r v. American Home Assurance Co.,* 255 Md. 334, 258 A. 2d 225 (1969); *Goodwin v. Home Indemnity Co.,* 255 Md. 364, 258 A. 2d 220 (1969); *Unsat. C. & J. Fund v. U. S. F. & G. Company,* 256 Md. 412, 260 A. 2d 279 (1970); *Keystone Insurance Company v. The Fidelity & Casualty Company of New York,* 256 Md. 423, 260 A. 2d 275 (1970).[9]

In *Erie Insurance Exchange, supra,* the Court quoted extensively from 7 Am. Jur. 2d *Automobile Insurance,* § 119, "Scope of permission; deviation from permitted use" wherein it is pointed out that, to determine whether the coverage of the omnibus clause applies to a given accident, it is first necessary to resolve two preliminary questions:

1) Was the permission or consent of the named insured granted to the operator; and if so,
2) was the vehicle being used at the time of the accident within the scope of the permission granted?

With respect to the second question, the treatise points out, it may be necessary to determine the effect of deviations from the permitted use. Such deviations may result from:

a) the use of the vehicle for other purposes,
b) *the extention of the permission by its delegation to third persons,* or
c) the use of the vehicle in violation of express instructions.

Finally, the Courts are divided sharply as to the legal theory applicable in determining when a deviation will preclude

---

**9.** Prior to Melvin, *see also* Selected Risks v. Miller, 227 Md. 174, 175 A. 2d 584 (1961). In all the cases above cited, the opinions were written by Judge Smith, except in Zurich, where the opinion was authored by the late Judge Finan, and Miller, by Judge, later Chief Judge Prescott.

coverage under the omnibus clause. Three different rules have been adopted:

1) the strict or conversion rule, whereby any deviation, no matter how slight, will preclude coverage;
2) the liberal rule whereby it is held that once permission is given, it will extend to any and all uses of the vehicle; and
3) the moderate or "minor deviation" rule under which the Courts hold that a slight deviation does not preclude coverage under the omnibus clause.

In the *Erie* case, the language of the policy, ". . . provided his [any other person using such automobile with the permission of the named insured] *actual operation* . . . is within the scope of such permission . . .," (emphasis added) was held to be "sufficiently explicit" to preclude application of the liberal rule and, on the facts of the case, it was unnecessary to decide whether Maryland adheres to the strict or moderate rule. The sole question at issue — whether the driver was acting within the scope of the permission [10] — was answered negatively since the accident occurred some 2½ hours after the driver had borrowed the car and it was headed in an altogether different direction than was represented to the owner.[11]

*Cohen, Adm'r, supra,* concerned an omnibus clause identical to that in the instant case and called for a decision as to its applicability to a son, Josephus, who borrowed the keys to his mother's car with the express understanding that a friend, Scott, and not Josephus, would do the driving. At the time of the accident, Josephus was behind the wheel and

---

**10.** Judge Smith cites annotations on the subject of the omnibus clause in 72 A.L.R. 1375, 106 A.L.R. 1251, 126 A.L.R. 544 and 5 A.L.R.2d 600 and states that in none of the cases cited therein is there a reference to a policy containing the modification found in the policy in Erie, *i.e.,* "within the scope of such permission."

**11.** The driver, L. W. Heiston, was also the involved operator in Zurich Insurance Company v. Monarch, *supra.*

there was no evidence to indicate that Scott was even in the car.

The Court of Appeals in *Cohen* again found it unnecessary to decide "whether we follow the strict or conversion rule or the moderate or 'minor deviation' rule." To determine whether the use comes within the purview of the omnibus clause, it was held, requires an examination of "the total facts." Such examination compelled the conclusion that the use made by Josephus "was not within the scope of the permission granted and was not the particular use contemplated when the permission was granted." [12] *Melvin* and *Mitnick, supra,* were distinguished on their facts. With respect to the latter, Judge Smith wrote (255 Md. at 348):

> "In *Mitnick, supra,* there was a general grant of use of the automobile. It was kept for the complete use of the granddaughter. It is true that she violated the instructions given to her by her grandfather when he told her that no one else was to operate the car, *but the car was generally available for her use and convenience and was being so used at the time of the accident.* (Emphasis added.)

The Court also distingushed *Melvin* factually and again its language is worth noting:

> "In *Melvin* . . . coverage was based on the fact that the car was really being used at the time by a member of the household who, therefore, was a named insured, a member of the household *who for his own convenience at the moment while using the car requested someone else to operate."* [13] (Emphasis added.)

---

12. The Court noted that the case "comes close to Zurich Company v. Monarch, [*supra*], in that it might well be said that the keys were obtained by deception." In Zurich the Court declined to decide between the conflicting "authorities on the proposition as to whether when a named insured leaves an automobile with someone else for their general use and that person in turn permits its use by another the use is deemed to be with the permission of the named insured," because it found that, in effect, no permission had been given the second permittee whose "presence behind the wheel was gained by deception."

13. The interpretation given Melvin in Keystone Ins. Co., *supra,* is also

Adopting the language of *Melvin,* the Court in *Cohen* ruled that in a case where coverage is extended by the policy only to persons using the vehicle with the permission of the named insured (or other designated person) "coverage depends in that situation upon the scope of the permission granted," and that the term "actual use" in an omnibus clause means "the particular use contemplated when permission is granted and relied on." In *Goodwin v. The Home Indemnity Company, supra,* (decided the same day as *Cohen*), the Court, after restating the above interpretations of "scope" and "actual use," found that the permission granted there to the operator "was to pick up the truck Saturday morning for the specific purpose of repair, not a Friday night (or early Saturday morning) escapade" (as had ensued), and it held that on those facts coverage did not include the operator.

Two 1969 cases decided by the United States District Court for the District of Maryland are here pertinent, particularly in the light of the prediction, contained in each, that in Maryland the "minor deviation" rule would be held applicable. In *Mt. Beacon Insurance Company v. Williams,* 296 F. Supp. 1094 (D.C.D. Md. 1969) the District Court had before it an omnibus clause similar to the one in the instant case. In deciding that of the three rules bearing on permissive use the Maryland Court of Appeals would adopt the so-called "minor deviation" rule in construing the policy in question, the Court (Thomsen, J.) referred to *Melvin* as follows:

> "The Maryland Court's discussion in the *Melvin* case indicates that such factors as the 'scope' of permission granted and the 'deviation' from that permission might be relevant in determining

---

noteworthy: "In Melvin coverage was held to exist under the omnibus clause because the son there involved was an 'insured' within the terms of the policy as a resident of the same household; *he was in the car at the time of the accident,* although not operating it, *and the car was on his mission at the time.*" (Emphasis added.) Keystone is representative of cases in which coverage was held not to include the driver because the owner granting permission in the first instance was not also the named insured. *See also* Selected Risks v. Miller, *supra,* and Unsat. C. & J. Fund, *supra.*

whether 'actual use' was 'with the permission of the named insured'. Both of these factors would be relevant only if the 'minor deviation' rule were applicable in Maryland." At 1096.

The Court went on to say:

"The minor deviation rule must be applied to the facts of the particular case. . . . The facts of the present case are that Mrs. Bright [wife of insured] gave Williams permission to use the car only to drive her to the hospital and wait there to take her home. At the time of the accident, *Williams was operating the car for a purpose entirely foreign to the permission granted, and at a place and time far beyond what was reasonable to expect of one attempting to find a parking place around the Union Memorial Hospital.* The actual use by Williams was not a minor deviation from the 'particular use contemplated when permission [was] granted and relied on.' " At 1100. (Emphasis added.)

And in *Travelers Corporation v. Kaminski*, 304 F. Supp. 481 (D.C.D. Md. 1969), involving construction of a similar omnibus clause, the District Court (Kaufman, J.) agreed with the prediction in *Mt. Beacon* that "Maryland, when faced with the issue [of a deviation from the permission granted], will adopt the 'minor deviation' rule." At 490.

From our review of Court of Appeals decisions dealing with the construction of omnibus clauses and with appropriate deference to United States District Court decisions making "informed predictions" as to future Maryland appellate rulings, we conclude that in Maryland:

1) Where coverage is extended by the omnibus clause only to persons using the vehicle with the permission of the named insured (or other designated person) coverage depends upon the scope of the permission granted.
2) In determining whether the scope of permission

has been exceeded, Maryland has not expressly adopted the strict rule, the liberal rule, or the minor deviation rule. However, *Melvin* supports by implication the minor deviation rule.

3) "Actual use" with the permission of the named insured is "the particular use contemplated when permission is granted and relied on."

4) Such use and the operation of the car at the time of accident are not "synonymous," for using a car by a borrower includes riding in it while another drives, at least where the former remains "the custodian of the instrumentality confided to his keeping," or the latter "is the agent or servant of another and subject to his immediate and present direction and control."

5) There is no case in Maryland squarely addressing the issue of whether a restriction upon the operation of the car, *i.e.*, a prohibition against permitting a third person to drive it, is *not* a factor in determining whether the operation of the car is in accordance with the particular use contemplated when permission was granted and relied on.

6) Nevertheless, the thrust of Maryland decisions is that in determining whether the operation is within the permission required by the omnibus clause "one must examine the total facts," and the facts of paramount significance respecting a clause for permitted use (as against permitted operation) do not pertain to the identity of the driver but to whether at the time of the accident the operation of the car was for a *purpose* germane to the permission granted, whether it was for the *convenience* of the named insured or the first permittee, and whether the latter was *present* in the car at the time of the accident.

This latter construction of permitted use under an omnibus

clause is in accord with the large majority of cases cited by the Court of Appeals in *Mitnick* and *Melvin, supra,* in support of the rule that "use" and "operation" of the car are "not synonymous." Moreover it is in accord with the majority of cases in general deciding the issue of permitted use. As stated in 7 Am. Jur. 2d § 117:

> "The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) *the original permittee is riding in the car with the second permittee at the time of the accident,* or (2) *the second permittee, in using the vehicle, is serving some purpose of the original permittee.* The courts generally reason that under such circumstances the second permittee is 'operating' the car for the 'use' of the first permittee and that such 'use' is within the coverage of the omnibus clause. While some courts apparently would limit this qualification of the general rule to situations where the named insured has not specifically forbidden driving by a third person, *it is more generally held that operation by a third person under such circumstances falls within the protection of the omnibus clause even where such operation is specifically forbidden by the named insured.*"

We conclude, therefore, as did the learned trial judge, that the total facts in this case support a finding that William, Jr. was still "using" his father's car, even though Lynanne Hampshire was driving the car at the time of the accident, and that the "actual use" was with the permission of William, Sr. Certainly, at the time of the accident, the operation of the car by the second permittee was for a purpose germane to the permission granted by father to son; it was, at the very least, for the convenience of the first permittee (if not, indeed, a matter of necessity in the light of the son's testimony), and, of course, the first permittee was present in the car at the time of the accident.

Does the fact that the father here had prohibited the operation of his vehicle by any person other than his son, preclude the extension to Lynanne of the coverage of Maryland Indemnity's omnibus clause? We think not.

*Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co.*, 166 A. 2d 355 (N.J. 1960), *supra*, directly posed the question whether a prohibition as to operation was "material" to a determination of permitted use of the car. The Supreme Court of New Jersey said it was not:

> "The clause says nothing about operation of the vehicle. It is the use which must be permitted. . . . [I]n this context the words *use* and *operation* are not synonymous. The use of an automobile denotes its employment for some purpose of the user; the word *'operation'* denotes the manipulation of the car's controls in order to propel it as a vehicle. *Use* is thus broader than *operation.*
>
> * * *
>
> *"Since in this context the words operation and use have different meanings and the omnibus clause requires only that the use of the automobile be with the permission of the named insured, any prohibition as to the operation of the automobile is immaterial to a determination of coverage.* Thus, even though a driver has been expressly prohibited from operating the car, he is covered if the car was being used for a purpose permitted by the named insured." (Emphasis added.)

The Supreme Court of Delaware, in a similar case in which the second permittee had operated the car in violation of the named insured's prohibition, reached a similar result where a daughter borrowed her father's car to go to the beach and the father had admonished her not to let anyone else drive. Returning home, she asked her boyfriend to drive. He did and the inevitable accident occurred. The Delaware Court agreed with the New Jersey Court that

"the word 'use' and the word 'operation' in this

context are not synonymous. *The use of the vehicle concerned is the purpose for which its use is permitted. As long as that use has been permitted, it is immaterial how the vehicle is operated.* The insured having given his permission for a particular use, may not be heard to complain, nor may his insurance carrier be heard to complain that the operation of the vehicle in *performance of the use or purpose* has been conducted in a way which the insured not only did not contemplate but actually forbade." *Allstate Insurance Company v. Nationwide Mutual Ins. Co.,* 273 A. 2d 261 (Del. 1970). (Emphasis added.)

*Arcara v. Moresse,* 179 N. E. 389 (N.Y. 1932), cited by the Court of Appeals in both *Mitnick* and *Melvin, supra,* drew an equally sharp distinction between use and operation:

"An owner in loaning his car may reasonably restrict the uses to which it may be put; consequently its employment for a proscribed purpose cannot be a permitted use. On the other hand, if the limiting instructions relate to the manner of operation, such as the speeding or careless pilotage of the car, though the instructions be disobeyed, nevertheless the use is with 'permission' of the owner. Maggio [first permittee] was not instructed that Barone [second permittee] should not be accepted as a guest; he was merely told that Barone must not drive. *The thing forbidden related to the operation of the car, not to the use which might be made of it.* We conclude that Maggio was 'using' the car with the 'permission' of the owner. (Emphasis added.)

Of course, the rule that restrictions on the identity of the driver are of inferior significance in determining the scope of permitted use has not received universal acceptance. Thus in *Farmer v. Fidelity & Casualty Company of New York,* 249 F. 2d 185 (4th Cir. 1957), the Circuit Court of Appeals, applying North Carolina law, stated:

"We know of no case, however, that goes to the extent of allowing an inference of permission in defiance of uncontradicted testimony, accepted in the District Court, that permission was not only withheld but that lending was specifically forbidden."

The factual situation in *Farmer* is not without significance, however. As recounted by the Court:

"Despite the strict prohibition which, according to the uncontradicted evidence, the father had imposed [on letting anyone else drive], Walter [first permittee] and his cousin James [second permittee] exchanged automobiles. James proceeded, for an undisclosed purpose, to Danville, Virginia. . . . Whatever the explanation for this exchange, it had nothing to do with any purpose of Moses Jeffreys [the father], who was unaware of the event until later. . . . Walter was not then in the car, and the mission in which James was engaged was not one for Walter." At 187.

*See also Prisuda v. General Casualty Co. of America,* 74 N.W.2d 777 (1956) upon which appellant relies but which we find unpersuasive.

We think, all told, that a distinction is validly made between situations where the law denies coverage under the omnibus clause because the named insured expressly prohibited the use of the automobile by any person other than his permittee and a second permittee has used the car solely for his own benefit, *see also Western Casualty & Surety Co. v. Grice,* 422 F. 2d 921 (10th Cir. 1970); *Royal Indemnity Co. v. Clingan,* 238 F. Supp. 448 (E.D. Tenn. 1965), modified on other grounds, 364 F. 2d 154 (6th Cir. 1966); 7 Appleman, *supra,* § 4361; Anno. 4 A.L.R.2d 10, 40, 61; and, on the contrary, where the law permits coverage because

a) the original permittee was riding in the car with the second permittee at the time of the

accident, *see also Standard Accident Casualty Co. v. New Amsterdam Casualty Co.*, 249 F. 2d 847 (7th Cir. 1957); *Protective Fire and Casualty Co. v. Cornelius*, 125 N.W.2d 179 (Neb. 1963); *Brooks v. Delta Fire and Casualty Co.*, 82 So. 2d 55 (La. App. 1955); or

b) because the second permittee was serving some purpose or advantage of the first permittee when the accident occurred. *See also National Farmers Union Property & Casualty Co. v. Lukins*, 329 F. 2d 564 (8th Cir. 1964); *National Farmers Union Property & Casualty Co. v. State Farm Mutual Auto Insurance Co.*, 277 F. Supp. 542 (D.C.D. Mont. 1967); *Loffler v. Boston Insurance Co.*, 120 A. 2d 691 (D.C. Mun. Ct. 1956).

Without being required to choose between the "liberal rule" and the moderate or "minor deviation" rule, *supra*, we hold that as both of the above tests were satisfied in the instant case, then upon either rule the Kornke automobile was being used within the scope of the permission granted by the named insured when the accident occurred, and that, therefore, Lynanne Hampshire was an insured under the omnibus clause of the Maryland Indemnity policy issued to Kornke, Sr.

*Judgment affirmed; appellant to pay costs.*