841 A.2d 46

**LIBERTY MUTUAL INSURANCE COMPANY, et al.**

v.

**MARYLAND AUTOMOBILE INSURANCE FUND, et al.**

No. 774, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Jan. 29, 2004.

Anton L. Iamele (Anerson & Quinn, on brief), Rockville, for appellant.

Thomas R. Mooers (Mooers & Associates, on brief), Washington, DC, for appellee.

Argued before KENNEY, KRAUSER, and GREENE *, JJ.

KRAUSER, J.

We are asked to decide whether a Maryland Automobile Fund (MAIF) policy covers an individual who has been granted permission to drive the insured's car by the person to whom the insured originally loaned it. In other words, was the second permittee, in this chain of possession, covered by the MAIF policy?

To answer that question, we begin by identifying the parties and the roles they played in this matter. We start with the insured, Dennis Ray Drewery. He lent his car to his son and namesake, Dennis Ray, Jr., who in turn allowed his friend, Leo J. Stevenson, to drive the automobile to the home of a mutual acquaintance. That proved to be a mistake with tortious consequences.

Shortly after Stevenson took over the wheel of the car, it collided with a parked car, causing that vehicle to strike a pedestrian, appellant Donald Andrew. As a result of that collision, Andrew incurred medical expenses and suffered a loss of wages, for which he was compensated by appellant, Liberty Mutual Insurance Company (Liberty Mutual). That led Liberty Mutual and Andrew to file a declaratory judgment action in the Circuit Court for Prince George's County, requesting a determination that Stevenson, as second permittee, was covered by Drewery, Sr.'s MAIF policy and that MAIF

---

* Greene, J., now a member of the Court of Appeals, participated in the conference and decision of this case while a member of this Court; and participated in the adoption of this opinion as a member of this Court by special designation.

should therefore indemnify them for all costs and expenses they incurred as a result of the accident.

Although Andrew, Stevenson, and both Drewerys were named as parties to this suit, at bottom, it was, and remains, essentially a coverage dispute between appellant Liberty Mutual and appellee MAIF. Consequently, we will cast our discussion in terms of those two entities, which are in fact the principal parties in interest here.

To the chagrin of Liberty Mutual, the circuit court, after a bench trial, declared that Stevenson was not covered under the MAIF policy and denied its request for indemnification. Liberty Mutual then noted this appeal presenting two issues that can be stated as one: "Did the trial court err in concluding that Stevenson was not covered under the MAIF policy?" For the reasons that follow, we shall hold that it did not and affirm the judgment of the circuit court.

### Background

At trial, the parties agreed to submit the depositions of both Drewerys in lieu of live testimony. In fact, the only witness to testify at trial was a MAIF adjuster, who testified as to the insurance policy Drewery had with MAIF. Consequently, the facts presented below are culled from the Drewerys' depositions.

On March 27, 1997, Dennis Ray Drewery, Sr.'s former wife telephoned him to ask if their son, Dennis Ray Drewery, Jr., could use Drewery, Sr.'s car to take her to work. Her place of employment was in Washington, D.C. Drewery, Sr. agreed to this request, and Drewery, Jr. arrived at his house to pick up the car. At that time, Drewery, Sr. instructed his son that he was to use the car to take his mother to work and then to bring the car back. Although Drewery, Sr., did not, on that occasion, instruct his son not to let anyone else drive the car, he had, in the past, "always told him" that only he could drive the car.

After leaving his father's house, Drewery, Jr. picked up a friend, Leo Stevenson, before driving to his mother's resi-

dence. With Stevenson, he picked up his mother and dropped her off at work. After leaving his mother's place of employment, the pair decided to visit Stevenson's cousin Rashad in Washington, D.C. Because Drewery, Jr. did not "know [his] way around there," he let Stevenson drive.

After picking up Rashad, the three men left Rashad's residence, with Stevenson still driving. On the way back to the residence of Drewery's mother, Stevenson struck a parked truck. The parked truck was propelled forward by the impact, striking and injuring Donald Leroy Andrew, an employee of the Flippo Construction Company. After the accident, Liberty Mutual, the worker's compensation insurance carrier for Flippo, paid Andrew worker's compensation benefits.

Liberty Mutual subsequently filed a complaint for declaratory relief in the Circuit Court for Prince George's County, requesting a declaration that Stevenson was covered under Drewery, Sr.'s automobile insurance policy with MAIF and that MAIF was therefore required to indemnify Liberty Mutual for compensation payments made to Andrew. The omnibus clause of the MAIF policy provided, in part, "[i]nsured means: 1. you and any person while using the covered automobile with your permission; 2. any person or organization legally responsible for the use of the covered automobile provided its actual use is by you or with your permission." Relying on that clause, MAIF denied coverage on the grounds that, at the time of the accident, Stevenson did not have Drewery, Sr.'s permission to operate the car.

A bench trial was held to determine whether Stevenson was covered under the MAIF policy. At the conclusion of that proceeding, the circuit court declared that Stevenson was not, because he "did not have the express permission of the insured, Dennis Ray Drewery, Sr." to drive his car and because "both father and son ... had a mutual understanding that the driving would be restricted to the son when the car was lent to him." After the court issued a written order declaring the rights and obligations of the parties consistent with its ruling, Liberty Mutual noted this appeal.

## Standard of Review

■ Because the trial below was a non-jury trial, our standard of review is governed by Maryland Rule 8–131. *Boyd v. State,* 22 Md.App. 539, 323 A.2d 684, *cert. denied,* 272 Md. 738 (1974). That rule provides that this Court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule 8–131(c). "A finding of a trial court is not clearly erroneous if there is competent or material evidence in the record to support the court's conclusion." *Lemley v. Lemley,* 109 Md.App. 620, 628, 675 A.2d 596 (1996).

■ Moreover, "[u]nder the clearly erroneous standard, this Court does not sit as a second trial court, reviewing all the facts to determine whether an appellant has proven his case." *Id.* Nor is it our function to weigh conflicting evidence. *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,* 355 Md. 566, 586–87, 735 A.2d 1081 (1999); *Weisman v. Connors,* 76 Md. App. 488, 547 A.2d 636 (1988), *cert. denied,* 314 Md. 497, 551 A.2d 868 (1989). Our task is limited to deciding whether the circuit court's factual findings were supported by "substantial evidence" in the record. *GMC v. Schmitz,* 362 Md. 229, 234, 764 A.2d 838 (2001)(quoting *Ryan v. Thurston,* 276 Md. 390, 392, 347 A.2d 834, 835–36 (1975)). And, in doing so, we must view all the evidence "in a light most favorable to the prevailing party." *Id.*

■ Although the factual determinations of the circuit court are afforded significant deference on review, its legal determinations are not. " '[T]he clearly erroneous standard for appellate review in [Maryland Rule 8–131] section (c) ... does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact.' " *Ins. Co. of N. Am. v. Miller,* 362 Md. 361, 372, 765 A.2d 587 (2001)(quoting *Heat & Power Corp. v. Air Prods. & Chem. Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1205 (1990)). Indeed, the appropriate inquiry for such determinations is whether the circuit court

was "legally correct." *Maryland Envtl. Trust v. Gaynor,* 140 Md.App. 433, 440, 780 A.2d 1193 (2001).

## Discussion

■ Liberty Mutual contends that the circuit court erred in holding that Stevenson was not covered under the MAIF policy when the accident occurred. We disagree.

The MAIF policy states:

We agree to pay, on behalf of the insured, all sums which the insured becomes legally obligated to pay for bodily injury and property damage caused by an accident and arising out of the ownership, patent or use of a covered automobile.

It then defines an "insured" as follows:

1. You and any person while using a covered automobile with your permission;

2. Any person or organization legally responsible for the use of a covered automobile provided its actual use is by you or with your permission.

To qualify as an insured under that policy, Stevenson must fall within either of these two definitions. He does not. At the time of the accident, he was not operating the covered automobile with the permission of the owner and insured, Drewery, Sr., as the Circuit Court concluded, and therefore does not fall within either definition.

Appellant contends, however, that Stevenson was covered by the policy because his operation of the vehicle had not been expressly forbidden by Drewery, Sr.; because he was operating the car on behalf of the person, who was given permission to use the vehicle, Drewery, Jr.; and because no restrictions had been imposed on the use of the vehicle. Appellant further claims that the circuit court applied the wrong case in arriving at what appellant describes as an "erroneous" conclusion. Instead of *Bond v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 289 Md. 379, 424 A.2d 765 (1981), the circuit court should have followed, according to appellant, the reasoning of this Court in

*Maryland Indem. Ins. Co. v. Kornke,* 21 Md.App. 178, 319 A.2d 603 (1974). Had it done so, appellant contends, the circuit court would have found that Stevenson was operating the covered automobile within the permission granted to Drewery, Jr. to use the vehicle.

There was, however, ample evidence presented that, at the time that Stevenson was operating the covered vehicle, there was, as the circuit court put it, a "mutual understanding" between father and son "that the driving would be restricted to the son when the car was lent to him." In support of that conclusion, the court first quotes the following testimony of Drewery, Sr.:

Q. Okay. Now, do you recall saying anything to your son about anyone else driving the vehicle?

A. Not that day, but always like I have let my son drive the vehicle, you know, through the past, and I have always told him, you know, that only, you know, him can drive the vehicle.

It then cites the testimony of Drewery, Jr.:

A. I was told not to let anyone drive.

Q. You have no recollection of your father saying anything that morning that would alter that understanding?

A. No, sir.

But that was not the only evidence of the understanding between the father and son as to the son's restricted use of the car—only the evidence that was expressly mentioned by the circuit court. In addition to that testimony, on two other occasions during his deposition, Drewery, Sr. restated his belief that he and his son had an understanding that when the car was loaned to his son only his son could drive it:

Q. Okay. Now, do you have any recollection on the morning of March 27, 1997 of saying anything that would give your son the impression that it was okay for someone else to use the car?

A. No.

And then he testified later:

A.  I know I had always told my son don't let anyone drive, so I couldn't understand why he let someone else drive the car, when he was the one that was supposed to have been driving.

Thus, the circuit court was correct in concluding that when Drewery, Jr. let Stevenson drive the vehicle, he violated that understanding.  Moreover, contrary to appellant's contention, there is substantial evidence that the vehicle was only to be used by Drewery, Jr. to transport his mother to and from work and not for any other purpose.  Drewery, Sr. testified as follows:

Q.  Okay. Tell me to the best of your recollection, and as word for word as you can recall, what you said to him and what he said to you concerning him borrowing the car that day?

A.  Okay. The reason why I let him use the car that day was like his mother's car was in the shop and she had to go to work, so I let him use the car to take her to work.

. . .

Q.  What conversation is there between you and him concerning him using the car?

A.  Okay. He was supposed to have been using the car to take her and bring the car back.

Thus, two out of three of appellant's assertions are flatly contradicted by the record, namely, that, at the time of the accident, there were no limitations imposed by Drewery, Sr. on who could drive the covered vehicle and for what purpose it could be used.  It is therefore clear that Stevenson did not have Drewery, Sr.'s permission to either drive the vehicle or to use it to pick up his cousin, Rashad.  Because Drewery, Jr. was prohibited from allowing others to drive his father's vehicle, and because the vehicle was on the way back from an unauthorized detour when the accident occurred, Stevenson was not covered by the MAIF policy.  Moreover, as we shall see, appellant's claim that the court erroneously relied on *Bond* and not *Kornke* in deciding this case is without merit, as

it is *Bond* which is applicable to the instant case and *Kornke* which is distinguishable from it.

In *Bond,* the car owner and insured gave her daughter permission to drive her car but instructed her that she was not to allow anyone else to drive the vehicle. 289 Md. at 384, 424 A.2d 765. The persons insured under the owner's insurance policy were the owner as the "named insured" and "any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission." *Id.* at 381, 424 A.2d 765.

Disregarding her mother's instruction, the daughter not only permitted a friend to drive the car but was not even present when the accident occurred. *Id.* at 383, 424 A.2d 765. The vehicle's only passenger was not so fortunate, and, as a result of the accident, suffered injuries. Seeking compensation for those injuries, the passenger filed a declaratory judgment against the insurer of the vehicle, among others, to determine the extent of the driver's coverage. *Id.* at 382, 424 A.2d 765.

Concluding that the car, at the time of the accident, "was not being used by anyone who was authorized expressly or by implication to use the car," the circuit court held that the owner's policy did not cover the accident and therefore that her insurance company was under no obligation to defend the driver or pay any judgment rendered against her. *Id.* at 383, 424 A.2d 765 (emphasis omitted). Affirming the circuit court, the Court of Appeals stated: "The reason we conclude that appellant Bond cannot prevail here ... is that once the trier of fact determined (as without being clearly erroneous he did in this case) that the named insured 'had *specifically* restricted her daughter, Kathy, from allowing anybody ... to drive the car,' and that this express ban was operative when the accident occurred, there is no escape from Judge Raine's further conclusion that 'you cannot imply something in face of an express statement to the contrary.' " *Id.* at 385, 424 A.2d 765 (citations omitted).

Appellant maintains, however, that *Bond* is distinguishable from the instant case because in *Bond* "the policy at the heart of [the] matter was significantly different from the MAIF policy." We disagree. The language in the *Bond* policy, to which appellant refers is as follows:

Persons Insured: Under the Liability and Medical Expense Coverages, the following are insureds:

(a) with respect to an owned automobile,

(1) the named insured,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

*Id.* at 381, 424 A.2d 765.

We perceive no substantive differences between this language and the language of Drewery, Sr.'s policy that would lead us to conclude that Drewery, Sr.'s policy provides broader coverage and covers an unauthorized driver on an unauthorized trip. We therefore reach the same conclusion as the *Bond* court did, namely, that the owner's insurance company is not the primary insurer in instances where the owner of the covered vehicle has not given express or implied permission to the second permittee to drive his car.

Moreover, appellant's reliance upon *Kornke* for contrary authority is misplaced. Indeed, *Kornke,* as noted, is factually distinguishable from the instant case. In *Kornke,* the issue before this Court was whether the omnibus clause of an automobile liability insurance policy covered a second permittee, who was in an accident, while operating the insured vehicle in fulfillment of the purpose for which the owner had entrusted the vehicle to the first permittee.[1] 21 Md.App. at

---

1. The relevant portion of the insurance policy stated:

Definition of Insured. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or

179, 319 A.2d 603. In that case, the owner of the covered car allowed his son to borrow the vehicle to drive a group of friends to a farm. He instructed his son that he was not to allow anyone else to drive the vehicle.

On the way to the farm, the car began to backfire. To find out what was wrong, the son pulled over to the side of the road. While attempting to fix the problem, the son crossed some engine wires and received an electric shock. The shock was strong enough to knock him down. Fearful that he was no longer able to drive the car, he allowed a passenger to drive the remainder of the way to the farm. On the last leg of the trip, the vehicle struck a bridge abutment, injuring the vehicle's two passengers. *Id.* at 182–83, 319 A.2d 603.

Bringing a declaratory judgment action, the father's insurance company argued that the insurance company of the driver was the "primary insurer" and, as such, was required to provide coverage and a defense in the personal injury suits brought by the passengers of the car against the driver. The circuit court disagreed.

Affirming that decision, this Court observed that "[u]pon these facts the trial court could readily conclude that 1) William Kornke, Jr. [son] received permission from his father ... to use the father's car ... and 2) Kornke, Jr., in turn, consented to the operation of the car by Lynanne Hampshire [the driver at the time of the accident] for the continuation of the trip...." *Id.* at 183, 319 A.2d 603. We therefore framed the issue as follows: "The question for decision ... is whether in these circumstances the use of the car continued, until the time of the accident, with the permission of Kornke, Sr., [father] and the effect of the express prohibition, repeatedly communicated by father to son, against allowing anyone else to drive." *Id.* at 183–84, 319 A.2d 603.

---

organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.

*Kornke,* 21 Md.App. at 180–81, 319 A.2d 603 (emphasis omitted).

We then noted that in determining whether the use of a vehicle falls within the omnibus clause " 'one must examine the total facts,' and the facts of paramount significance respecting a clause for permitted use ... do not pertain to the identity of the driver but to whether at the time of the accident the operation of the car was for a purpose germane to the permission granted...." *Id.* at 192, 319 A.2d 603. "Certainly, at the time of the accident," we observed, "the operation of the car by the second permittee was for a purpose germane to the permission granted by father to son...." *Id.* at 193, 319 A.2d 603. We therefore concluded that "William, Jr. [son] was still 'using' his father's car, even though Lynanne Hampshire was driving the car at the time of the accident, and that the 'actual use' was with the permission of [the father]." *Id.* Therefore, the omnibus clause of the father's insurance policy covered the second permittee.

Even though Stevenson was driving because he reportedly knew the D.C. area better than Drewery, Jr., the operation of Drewery, Sr.'s car was not "for a purpose germane to the permission granted." *Id.* There is no dispute that Drewery, Jr. was given permission to use the car only for the purpose of taking his mother to work. After completing that task, Drewery, Jr. and Stevenson decided, without consulting Drewery, Sr., to continue on into the District of Columbia to pick up Stevenson's cousin. Since Drewery, Jr. was not granted permission to use the car for any other purpose than to take his mother to work, the use of the car at the time of the accident was outside of the scope of the permission granted. Therefore, the circuit court did not err in finding that Stevenson was not covered under the MAIF policy.

**JUDGMENT OF THE CIRCUIT COURT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**