PATRICIA MARIE BOND ET AL., v. PENNSYLVANIA
NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY

[No. 85, September Term, 1980.]

*Decided January 20, 1981.*

380

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Susan S. Miller,* with whom was *Frederick Wm. Miller* on the brief, for appellant *Patricia Marie Bond* and by *Hartman J. Miller* for appellant *Liberty Mutual Insurance Company.*

*M. Natalie McSherry,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The omnibus clause of an automobile liability insurance policy is at the apex of this dispute. Relevant here, the portion of the policy which includes it, reads:

> Persons Insured: Under the Liability and Medical Expense Coverages, the following are insureds:
>
> (a) with respect to an owned automobile,
>   (1) the named insured,
>   (2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

The current case presents issues respecting the scope of the insurance protection afforded by this provision.

Plaintiff Patricia Marie Bond, one of the two appellants here, initiated this declaratory judgment action in the Circuit Court for Baltimore County to have determined under three insurance policies her rights to personal injury coverage and payment of medical expenses for injuries she sustained in an automobile accident. In addition, Patricia sought declarations of liability protection for Renee Irene Lantz, the non-owner operator of the vehicle in which the plaintiff was a passenger when injured, under two of the insurance policies or, in the alternative, coverage under the uninsured motorist provisions of the plaintiff's personal automobile policy. In pursuit of these objectives, Patricia joined as defendants in her action: Renee Lantz, the driver of the involved automobile; Pennsylvania National Mutual Casualty Insurance Company, the insurance carrier covering the vehicle in which the plaintiff was injured; Liberty Mutual Insurance Company (the other appellant), the insurer of the Renee Lantz family automobile; and The Home Indemnity Company, the uninsured motorist insurer under plaintiff Bond's own policy.

The accident which spawned this litigation occurred on July 1, 1978, when the automobile owned by Lillian Fairley but operated by Renee Lantz collided with a utility pole,

injuring passenger Patricia Bond. The car, a 1967 Dodge Dart, was purchased by Lillian Fairley's husband shortly after their child, Kathy, celebrated her sixteenth birthday and, though the car was owned by her father, the daughter was granted very extensive use of it. Upon Mr. Fairley's death, title to the Dart was transferred to his widow and Kathy's mother continued to permit her daughter to enjoy near exclusive use of the automobile. The vehicle, on the day of the accident, was insured by Penn National, whose liability policy denominated owner Lillian Fairley as the named insured and recorded her daughter, Kathy, to be the principal operator of the car.

The record before us reveals that on the day of the accident, by prearrangement, Kathy drove the Dart to Patricia's house to fetch her friend and from there the two travelled to pick up Renee at her home. The three young ladies had intended to proceed to a dance in Essex, but, as they were a bit early, the trio decided to stop at a nearby bar "just to sit around and talk for a while." Shortly after Kathy and a boyfriend she met at the bar left the establishment and went for a drive in his car, Renee and Patty decided to go to a nearby carnival in the Dart. It was on the return trip to the bar, with Renee driving, that the one car accident occurred. Although large portions of the relevant evidence are in conflict, Chief Judge Raine, as the trier of fact, resolved those differences by making findings which we, under the Maryland Rule 886 standard, cannot say are "clearly erroneous"; accordingly, we accept those determinations as established. The Chief Judge spoke:

> I find as a fact that Kathy Fairley gave permission to Renee Lantz to drive the Dodge Dart that was involved in an accident in which Patricia Bond was injured.
>
> * * *
>
> The restrictions on the area of use was the broad metropolitan Baltimore area, so that I find as a fact that the car was being used within the permitted

geographic area set forth by the owner, the named insured.

* * *

Kathy Fairley was allowed to roam at will [in the Dart] and the time involved was within the scope of Kathy's permitted use.

However, I find as a fact that the person driving the car was Renee Lantz, and the owner and *named insured had specifically restricted her daughter, Kathy, from allowing anybody, including Renee Lantz, to drive the car.* And Renee had heard Mrs. Fairley say that, but she did not think that that was an order coming from the real owner; she reasonably believed that she had gotten permission from the owner, she erroneously believing that Kathy was the owner and not Mrs. Fairley.

* * *

I find as a fact, that [the Dart] was not being used by anyone who was authorized *expressly or by implication* to use the car. [(Emphasis supplied).]

Based on these determinations (as well as other undisputed germane evidence), the circuit court declared with regard to insurance coverage of the July 1 accident: (i) that neither Penn National nor Home Indemnity was obligated to defend Renee Lantz or to pay any judgment rendered against her; and (ii) that Liberty Mutual must, in addition to providing Renee a defense for suits instituted against her, pay on her behalf all judgments rendered in those suits to the full extent of its policy limits. Since we observe no error in these declarations, we will not interfere with the judgment as it was entered by the circuit court.

In this Court the two appellants make independent and differing arguments in urging reversal of the declaratory judgment as entered by the circuit court. But before discussing the specific contention made by each with respect to the reach of the provisions of the insurance policies here

encountered, we make a few general observations that underlie interpreting such contracts. Insurance policies, being contractual, are construed as other contracts. *National Grange Mut. Ins. v. Pinkney,* 284 Md. 694, 704-06, 399 A.2d 877, 882-83 (1979). Thus,

> "[i]t is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning. Absent ambiguity the construction of the contract remains within the province of the court and Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insurer. If the language of an insurance contract is ambiguous, however, construction is for the jury, and the ambiguity is to be resolved against the company which prepared the policy and in favor of the insured." [Id. at 705, 399 A.2d at 882, with citations omitted and quoting from *Gov't Employees Insur. v. DeJames,* 256 Md. 717, 720, 261 A.2d 747, 749 (1970).]

With these guidelines before us, we now consider the respective contentions here made by the appellants.

(i)

Urging "that a relatively unrestrictive permission [granted to the first permittee (here, Kathy Fairley)] to use the insured automobile carries with it an implied authority from the named insured to allow third persons to use the automobile consistent with the original permission," appellant Bond contends that, based upon the law as well as the evidence before it, the trial court was "clearly erroneous in its findings" which exonerated Penn National of any financial responsibility springing from the July 1 accident. In support of her position, Patricia, citing 7 J. Appleman, *Insurance Law and Practice* § 4365 (1962), states that, in considering whether a driver of an automobile becomes an insured under the omnibus clause of an insurance policy, it

is unnecessary both generally and under the law of this State to show express permission from the named insured since "whenever the term permission appears in an automobile insurance policy, the courts consider that such term may be read as though the word 'implied' precedes it." While recognizing that this Court has heretofore concluded that coverage under an omnibus clause may exist by permission found by implication, *Federal Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 472, 341 A.2d 399, 406 (1975), this is of no avail to appellant here in light of the posture in which this case reaches us. In discussing why this is true, we initially note that the principal focus of our inquiry is on the relationship between the named insured (the mother) and the first permittee (Kathy Fairley) and not, as Patricia would have it, between the first and second permittees. Moreover, the existence of permission, whether express or implied, is largely a factual determination, and one which varies in response to the circumstances present in each case. The reason we conclude that appellant Bond cannot prevail here, and the short answer to her contrary assertion, is that once the trier of fact determined (as without being clearly erroneous he did in this case) that the named insured "had *specifically* restricted her daughter, Kathy, from allowing anybody, including Renee Lantz, to drive the car," and that this express ban was operative when the accident occurred, there is no escape from Judge Raine's further conclusion that "you cannot imply something in face of an express statement to the contrary." *Insurance Co. of N. Amer. v. State Farm,* 281 Md. 381, 378 A.2d 1344 (1977); *Goodwin v. Home Indemnity Co.,* 255 Md. 364, 258 A.2d 220 (1969); *Cohen v. Am. Home Assurance Co.,* 255 Md. 334, 258 A.2d 225 (1969). See also 6C J. Appleman, *Insurance Law and Practice* § 4370 (Buckley ed. 1979), citing supporting court decisions. This is so because implied permission arises from the use of circumstantial evidence showing a course of conduct indicative of mutual acquiescence or a lack of objection signifying permission and, thus, it flows by inference to fill the void created by the absence of an express statement. See *Federal Ins. Co. v. Allstate Ins. Co., supra* at 470-72, 341 A.2d at 405-07. But

when an uncountermanded express statement exists, there is no vacuum to be filled. The vast majority of our sister jurisdictions considering the matter have reached a decision which is in accord with the view we express. See 4 A.L.R.3d 10, 61-75 (1965) for a compilation of cases on this point.[1] Consequently, we dismiss appellant Bond's assertion of error.

(ii)

Appellant Liberty Mutual's argument in this Court is conceptually somewhat more elusive than is that of appellant Bond. As we understand it, the insurance company's argument embraces three sequential phases, the first of which is that "use" and "operation" as employed in the omnibus clause are not synonymous words, with "use", the broader of the two, encompassing utilization of the automobile by one not necessarily driving it. This appellant next asserts that the insurance policy provides coverage for persons whose "actual use [of the automobile] is within the scope of [the] permission," and, according to appellant, this is so without regard to whether that person or another is operating the vehicle with, or contrary to, the express direction of the owner. From these two assertions, it is then urged that because Mrs. Fairley was well aware that the daughter was frequently accompanied by Renee as a passenger when operating the Dart, the mother impliedly permitted this friend to "use" it, thus bringing Renee within the scope of the coverage provided by the omnibus clause.

This argument does violence to the clear language of the insurance policy and we reject it. Unless some statute, regu-

---

1. This annotation notes two variations from the general rule denying coverage to the second permittee where the named insured expressly prohibited the first permittee from allowing others to drive the car. They are, one, where the first permittee was riding in the car, or was benefited by its operation, and two, where the second permittee's driving was occasioned by an emergency or a situation involving elements of urgency or necessity, benefiting the first permittee. Neither of these variations are applicable here, and we have in this case no occasion to consider their viability in this State.

lation having the effect of a statute, or public policy is violated, (and none is suggested by the parties here) insurance, being contractual, is measured by the contract terms.[2] In this case the terms of the insurance agreement clearly require that the operator have permission of the named insured to drive the vehicle, and if that person does not, there is no coverage for her under this policy. Put another way — when the use being made of the automobile is operation of it, this insurance policy in unambiguous language specifies that the person operating the vehicle enjoy permission to do so from the named insured. See *National Grange Mut. Ins. v. Pinkney, supra.* Since Judge Raine concluded there was a contrary directive issued in this case, the Penn Mutual policy provides no coverage to this driver, Renee Irene Lantz.

> *Judgment of the Circuit Court for Baltimore County affirmed. Appellants to pay the costs.*

2. Neither appellant urges that the omnibus clause before us is void as against public or legislative policy. Consequently, we do not consider the matter here.