**REPORTED**

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 0046

September Term, 2013

DAVID PAYNE et ux.

v.

ERIE INSURANCE EXCHANGE et al.

Matricciani,
Kehoe,
Moylan, Charles E., Jr.
 (Retired, Specially Assigned),

JJ.

Opinion by Moylan, J.

Filed: January 29, 2014

A grant of permission to use a motor vehicle can pass swiftly from a named insured to a first permittee to a second permittee.  The liability coverage under a policy's omnibus clause, however, may not replicate so facile a transfer, as if passing easily from Tinker to Evers to Chance.  The grant of permissive use may sometimes stop at Evers and never make it all the way to Chance.  Even should the permissive use get into the hands of Chance, however, his status may be discounted as that of a mere agent or chauffeur of Evers.  Tinker, by and large, will be free of troubles.  In any event, insurance law can be a more sluggish arena than Wrigley Field.

## Did The Tortfeasor Have Insurance?

At approximately three p.m. on February 11, 2008 on Route 202 in Prince George's County, the automobile then being driven by the appellant, David J. Payne, Sr., was struck by a 1995 Subaru Legacy being driven by Ameen Ragher Abdulkhalek.  The appellant sued, inter alia, Abdulkhalek.  The 1995 Subaru Legacy, however, was owned by Alan Dwyer.  The appellee, Erie Insurance Exchange, had issued a policy of automobile liability insurance to Alan Dwyer for the Subaru Legacy.  The only issue before us is whether coverage under the omnibus clause of Erie's insurance policy extended from Alan Dwyer to Abdulkhalek.

Under the policy, Alan Dwyer was the named insured.  In defining precisely who received liability protection under the policy, the omnibus clause spelled out:

"**Anyone we protect**" means:

1.      "**you**" or any "**relative**" using an "**auto we insure;**"

2.      any person using, or any person or organization legally responsible for the use of, an "**owned auto we insure.**" This use must be with "**your**" permission unless the use is by a "**relative;**" and

3.      any person or organization legally responsible for the use, by "**you**" or a "**relative**," of any "**non-owned auto.**" This protection applies only if the person or organization does not own or hire the vehicle being used.

(Emphasis in original).

The 1995 Subaru Legacy that figures in this case had been purchased by Alan Dwyer primarily for the use of his 34-year-old daughter, Karen Dwyer. Karen, along with her three children, lived at home with her mother and father. Karen suffered periodically from Lupus. For purposes of analyzing the policy coverage on the Subaru Legacy, Karen generally had the unlimited permission of her father to use the Legacy as she wished, with one significant prohibition. Karen was the first permittee for using the insured vehicle.

The one significant prohibition imposed by Alan Dwyer on the use of the Legacy was with respect to Abdulkhalek. Dwyer absolutely forbade Karen's allowing Abdulkhalek to drive the car. Abdulkhalek, though he did not live with Karen, was the biological father of her three children. Two of Karen's and Abdulkhalek's three children attended the St. Ambrose private school, which is located within the same residential community where the Dwyers live. Normally, Karen makes the two minute drive to pick the two up from school. On February 11, 2008, however, Karen was feeling ill with Lupus and asked Abdulkhalek to take the Legacy and pick the children up. Instead of going directly to the school, which is only two blocks away, Abdulkhalek for some unknown reason drove out onto Md. 202

and to an Exxon station, where he remained for approximately three minutes. Whether the detour was to gas up the car or simply to pick up a pack of cigarettes, we are not told. In any event, it was after leaving the Exxon station that, at a traffic light on Md. 202, Abdulkhalek hit the rear of the car driven by David Payne.

When this case came on for a pretrial hearing before Judge John P. Davey in the Circuit Court for Prince George's County on February 15, 2013, Judge Davey denied the appellant's motions for a declaratory judgment and for summary judgment but granted Erie's motion for summary judgment. This appeal timely followed.

## The Use Versus The Operation Of A Vehicle

The appellant relies primarily on <u>Maryland Indemnity Insurance Co. v. Kornke</u>, 21 Md. App. 178, 319 A.2d 603 (1974). In <u>Kornke</u>, the named insured of a vehicle was the father and the first permittee was the father's teenaged son. At the very outset of the opinion, this Court pointed out that we were dealing with the extent of the coverage of a policy's omnibus clause.

> <u>The so-called "omnibus clause,"</u> required by statute in a number of states, is in addition to the general insuring clause and <u>extends the protection of the automobile liability insurance policy to any person using the insured vehicle</u> provided the use (or "actual use") is by the named insured or <u>with his permission or consent. The clause, irrespective of language variations, clothes the named insured with broad authority to constitute other persons as "additional insureds."</u>

21 Md. App. at 180 (footnotes omitted; emphasis supplied).

In Kornke the named insured of a 1960 Chevrolet hardtop was William T. Kornke, Sr. His 18-year-old son, a high school student living at home, used the car regularly for purposes of going to school and to work and drove the car "almost every day." When the son would wish to use the car for a date or other social purpose, however, he would generally ask for special permission from his father. On the critical date in the case, the son, with his father's permission, was driving the family car, with three other friends, to a late-night cookout. In attempting to repair a faulty electrical connection in the engine, the son received an electric shock and his right hand and arm temporarily "numbed up." Although his father had in the past told him not to allow anyone else to drive the car, on this occasion the son asked one of his friends to take over the driving. An accident ensued.

After examining the case law and observing that "use and operation are not synonymous," 21 Md. App. at 186, this Court's opinion held that the son was, indeed, using the car even though someone else was behind the wheel. Our holding clearly stated that the son was using the car even though he was not driving it, but also that his actual presence in the car was nonetheless a sine qua non for extending the liability coverage.

> [U]sing a car by a borrower includes riding in it while another drives, at least where the former remains "the custodian of the instrumentality confided to his keeping," or the latter "is the agent or servant of another and subject to his immediate and present direction and control."

21 Md. App. at 192 (emphasis supplied).

After analyzing earlier Maryland cases, our opinion pointed out for the first time in this state that the scope of the permission ordinarily granted by the named insured to the first

permittee is not simply the entitlement to operate the vehicle but, more broadly, an entitlement to use the vehicle for a permitted purpose even though the literal operation of the vehicle is delegated to someone else.

## The First Permittee Must Be In The Car

The actual presence of the first permittee in the vehicle, however, is a <u>sine qua non</u> for any coverage of the actual driver as a second permittee. It is the first permittee who is deemed to be actually using the car and the second permittee, who is driving, is considered to be the mere agent (or chauffeur) of the first permittee. The Maryland case law has never extended coverage under an omnibus clause to an absentee use of the vehicle by the first permittee, such as sending the second permittee on an errand while the first permittee stays home. The rationale energizing <u>Kornke</u>'s expanded interpretation of a "permitted use" as opposed to a more restricted "permitted operation" of the vehicle is that the first permittee is present in the car as the master of the ship even when not literally standing at the helm. Under all circumstances, the first permittee must be on board. On this critical issue, <u>Kornke</u> relied heavily on the earlier Maryland decision of <u>Hardware Mutual Casualty Co. v. Mitnick</u>, 180 Md. 604, 26 A.2d 393 (1942).

> Chief Judge Bond, writing for the Court, rejected this contention, holding that <u>using includes riding while another drives</u>:
>
>> <u>"But using a car in the ordinary acceptation of the words seems clearly to include a borrower's making use of it by riding while driven by another.</u> Mrs. Phillips (the granddaughter) was '<u>still the director of the enterprise, still the custodian of the</u>

> instrumentality confided to (her) keeping, still the master of the
> ship.'"

21 Md. App. at 185 (emphasis supplied).

The second earlier Maryland opinion that <u>Kornke</u> relied upon was <u>Melvin v.</u>
<u>American Automobile Insurance Co.</u>, 232 Md. 476, 194 A.2d 269 (1963). In that case,
Judge (later Chief Judge) Henderson made it clear that although the actual user of a vehicle
need not be the person behind the steering wheel, the user must nonetheless be present in
the vehicle so that the driver may be said to be "subject to his immediate and present
direction and control."

> We see no reason to limit the meaning of the words "actual use" to the
> operation of a vehicle, <u>where the operator is the agent or servant of another</u>
> <u>and subject to his immediate and present direction and control.</u>

232 Md. at 478-79 (emphasis supplied).

As the case law about the extent of coverage authorized by the typical omnibus clause
developed, this Court's opinion in <u>Kornke</u> was a major landmark in that evolution.[1] It
articulated for the first time in a clear holding the critical distinction between the permitted
use of a vehicle and the permitted operation of a vehicle. Permitted use embraces permitted

---

[1] In <u>National General Insurance Co. v. Government Employees Insurance Co.</u>, 81 Md.
App. 104, 111, 566 A.2d 1117 (1989), Judge Rosalyn Bell praised the fact that in <u>Kornke</u>,
"this Court changed the tide of decisions which refused to extend coverage to permittees and
second permittees."

operation but is significantly broader. It includes both the active modality of driving and the passive modality of being driven.[2]

Kornke's recognition of the passive modality of being driven in a vehicle for a permitted purpose was a logical expansion of liability coverage, but the expansion was not without its limits. The first permittee's use of the automobile contemplates an actual use and not a mere constructive use. If the first permittee is actually driven to the pharmacy to pick up her medicines, the expanded liability coverage travels with her and with her driver as well. If, on the other hand, the first permittee's trip to the pharmacy is only a constructive one, as she stays at home and sends her driver in her stead, the expanded liability coverage stays home with her. The permitted use of a vehicle contemplates that the first permittee, who is the first and last recipient of the grant of permission by the named insured, actually be present in the vehicle. It is not enough that the vehicle is being used for her purposes or benefit. It is required that the first permittee be the actual user and not simply the beneficiary of the use. The chain of permissive use does not extend to an absentee user. The expanded liability coverage adheres to the person of the first permittee. To enjoy coverage derivatively from the first permittee, the second permittee must be within the first permittee's penumbra.

---

[2]Use is not synonymous with operation. If Her Royal Majesty should grant permission to the Prince of Wales to use the Royal Rolls Royce, the Prince of Wales, as first permittee, will be using the Rolls Royce even should the Yeoman Chauffeur be at the wheel. Thus it is with the typical teenaged child and the use (not merely the operation) of the family car.

The failure to appreciate that a permitted use demands the first permittee's presence as well as being for the first permittee's benefit is the fatal flaw in the appellant's argument. He looks only to the fact that the trip to pick up the children from school was for Karen's benefit. He utterly discounts the requirement of Kornke, and all of the other cases, that Karen must have been in the vehicle for the expanded coverage to attach to the vehicle.

In Federal Insurance Co. v. Allstate Insurance Co., 275 Md. 460, 341 A.2d 399 (1975), the Court of Appeals held that under the omnibus clause of an automobile liability policy issued by Allstate to a named insured, the coverage extended to a second permittee who was driving the vehicle at the time of an accident. The named insured was Direct Way Auto Shippers, a company in the business of delivering automobiles for its customers from New York to Florida. The driver hired by Direct Way to deliver the vehicle to Florida was Richard Frank. Without permission having been granted to do so Frank took along on the trip both his girlfriend and another acquaintance, James Straz. It was Straz who was actually driving when the car was involved in an accident in Prince George's County, Maryland. The issue before the Court of Appeals was clear.

> Clearly, Direct Way, the named insured, gave permission to Frank to drive the car to Florida. There was, however, no express permission given Frank to carry passengers or to allow another person to drive the vehicle.

275 Md. at 470 (emphasis supplied).

Frank, the first permittee, was covered because each of two necessary conditions was satisfied. The car was being used for the specific purpose for which the permitted use had

been granted by the named insured, to wit, getting the car to Florida. The second requirement was also satisfied. Notwithstanding the fact that Frank was not driving, he was physically in the car and in charge of the mission. It was he, therefore, who was using the car, albeit not driving it.

> Since Frank, the first permittee of Direct Way, was in the car while enroute to Florida at the time of the accident, it was still being used for the purpose for which it was given to Frank. Because Frank was the "custodian of the instrumentality confided" to him, it is clear under the Maryland cases that he was using the automobile. Accordingly, Frank is an insured under the Allstate policy.

275 Md. at 470-71 (emphasis supplied).

In then going on to hold that the driver, Straz, was also covered as a second permittee, the indispensable element was that Frank, the first permittee, was physically present in the car. The first permittee was the captain, and the captain has to be on board.

> [T]here was implied permission from Direct Way to Frank to subdelegate the driving to Straz, in light of these facts: the first permittee (Frank) was a passenger in the car and had control and direction of the car; subdelegation of permission to drive was not specifically forbidden; the second permittee (Straz) was serving some purpose of Frank; and both Straz and Frank, by driving the Schwartz vehicle to Florida, were serving a purpose of the named insured (Direct Way). Consequently, Straz is also an insured under the omnibus clause of the Allstate policy.

275 Md. at 472 (emphasis supplied).

In discussing the general disfavor of second permittees but the exception to that general disfavor when the first permittee is actually in the car, the Court of Appeals quoted from 7 Am. Jur. 2d:

In discussing this question, 7 Am. Jur. 2d, Automobile Insurance, § 117 (1963), states:

> "The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has <u>generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident,</u> or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee."

275 Md. at 471 (emphasis supplied).

<u>Nationwide General Insurance Co. v. Government Employees Insurance Co.</u> ("Geico"), 81 Md. App. 104, 566 A.2d 1117 (1989), reechoed the requirement that for a second permittee to enjoy coverage, the first permittee must be present in the vehicle. The named insured in that case gave his teenaged daughter a broad grant of permission to use a family car, particularly for the purpose of driving to school. The father specifically instructed his daughter that "she was not to let anyone else drive the car," expressly including her boyfriend, Stephen. On a trip to school, however, Stephen was driving when an accident occurred.

This Court held that Stephen, as a second permittee, enjoyed coverage notwithstanding the directive of the named insured to his daughter that Stephen not be permitted to drive the car. This Court took advantage of the two ameliorating circumstances that the Court of Appeals had simply recognized as theoretical possibilities in <u>Bond v. Pennsylvania National Mutual Casualty Co.</u>, 289 Md. 379, 424 A.2d 765 (1981). A significant finding was that the trip to school was for the benefit of the daughter and was

unquestionably for the purpose for which the permissive use had been granted. The

absolutely critical criterion was that the daughter, as first permittee, was present in the car

at the time of the accident. This circumstance in <u>Geico</u> was expressly contrasted with the

contrary circumstance in <u>Bond</u>.

> Unlike <u>Kornke</u> and the instant case, the first permittee was not present in the
> automobile when the <u>Bond</u> accident occurred.

81 Md. App. at 113.

That distinction was critical to our allowing of that first ameliorating exception to

extend the policy's coverage from the first to the second permittee.

> We hold that the instant case falls within <u>the first proposed exception</u>
> <u>alluded to in Bond</u>, and meets the <u>Kornke</u> "tests" since Nancy, <u>the first</u>
> <u>permittee, was in the car</u> with Stephen and was benefitted by its operation. ...
> Further, the present case is factually quite similar to <u>Kornke</u> and unlike <u>Bond</u>
> since <u>the first permittee accompanied the second permittee.</u>

81 Md. App. at 115 (emphasis supplied).

We also pointed out that our view was in line with the broad consensus of sister

jurisdictions.

> According to the most recent ALR annotation, 21 A.L.R. 4th 1146, <u>the</u>
> <u>broad view is</u> that even where the first permittee is expressly prohibited from
> allowing others to drive <u>coverage ordinarily extends to a second permittee</u>
> <u>where the first permittee was a passenger in the vehicle at the time of the</u>
> <u>accident.</u>

81 Md. App. at 117 (emphasis supplied). Lest there be any doubt, we concluded the opinion

with the following square holding:

- 11 -

[W]e hold that this case, like <u>Kornke</u>, fits the first exception alluded to in <u>Bond</u> since <u>the first permittee was both present and benefitted by the second permittee's driving.</u>

81 Md. App. at 123 (emphasis supplied).

## The Scope of the Permission

Quite aside from the fact that Karen, the first permittee, was not in the car when the accident occurred, a second, independent, and self-sufficient reason why Abdulkhalek did not enjoy coverage under the omnibus clause was that the person authorized to define the scope of the grant of permission, the named insured, had explicitly directed that Abdulkhalek, by name, was prohibited from driving the Subaru Legacy. Among other possible disqualifications in Alan Dwyer's mind was the fact that Abdulkhalek had had his driver's license suspended. In his deposition, Alan Dwyer stated:

Q  You heard Mr. Khalek say that there was, I guess, sort of a standing order prior to the date of this accident that he not drive your vehicles.

A  Yes.

Q  Is that a correct statement by Mr. Khalek?

A  Very correct.

For his part, Abdulkhalek was fully aware of the prohibition on his driving of the car.

Q  Now, had Mr. Dwyer ever told you that you were not allowed to drive his car?

A  Yes.

Q  When did he tell you that?

- 12 -

     A       I don't recall the exact date, but <u>it was a known fact I was not</u> <u>allowed to use that car because of the status of my license.</u>

(Emphasis supplied).

<u>Bond v. Pennsylvania National Mutual Casualty Insurance Co.</u>, 289 Md. 379, 424 A.2d 765 (1981), was stern in its insistence that if the limits placed by the named insured on the grant of permissive use are unambiguous, those scope limitations are not to be ignored. Judge Digges's opinion for the Court of Appeals, quoting <u>National Grange Mutual Insurance</u> <u>v. Pinkney</u>, 284 Md. 694, 704-05, 399 A.2d 887 (1979), stated at the outset that an insurance policy is a contract and that the normal rules for construing a contract apply to a contract of insurance:

> [I]t is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning. Absent ambiguity the construction of the contract remains within the province of the court[.]

289 Md. at 384.

In <u>Bond</u>, 289 Md. at 383, even as in the present case, the named insured had expressly directed that the ultimate driver of the vehicle, by name, was not to be permitted to drive it.

> I find as a fact that the person driving the car was Renee Lantz, and the owner and named insured had specifically restricted her daughter, Kathy, from allowing anybody, including Renee Lantz, to drive the car. And Renee had heard Mrs. Fairley say that[.]

In defining the scope of a grant of permissive use, moreover, the focus must be on the relationship between the named insured and the first permittee and not on the relationship between the first permittee and the second permittee.

- 13 -

> [W]e initially note that <u>the principal focus of our inquiry is on the relationship between the named insured (the mother) and the first permittee (Kathy Fairley) and not</u>, as Patricia would have it, <u>between the first and second permittees.</u>

289 Md. at 385 (emphasis supplied).

It is true that when the admonition by the named insured is from a parent to a teenaged child and is simply a generic "Do not let anyone else drive the car," the courts have sometimes been willing to find an overriding implied consent by the named insured under various sets of reasonably persuasive circumstances. The <u>Bond</u> opinion is steadfast, however, that such tolerant inferential factfinding is inappropriate in the face of an unambiguous command by the named insured to the contrary.

> [O]nce the trier of fact determined ... that the named insured "had specifically restricted her daughter, Kathy, from allowing anybody, including Renee Lantz, to drive the car," and that this express ban was operative when the accident occurred, there is no escape from Judge Raine's further conclusion that <u>"you cannot imply something in face of an express statement to the contrary."</u> This is so because <u>implied permission arises from the use of circumstantial evidence</u> showing a course of conduct indicative of mutual acquiescence or a lack of objection signifying permission <u>and</u>, thus, <u>it flows by inference to fill the void created by the absence of an express statement. But when an uncountermanded express statement exists, there is no vacuum to be filled.</u> The vast majority of our sister jurisdictions considering the matter have reached a decision which is in accord with the view we express.

289 Md. at 385-86 (emphasis supplied). The circumstantially implied consent that may trump a modest admonition does not have the same force against an unequivocal command.

The <u>Bond</u> opinion did, however, note two possible situations in which a stern adherence to the named insured's prohibition might be ameliorated.

- 14 -

> This annotation notes <u>two variations from the general rule denying coverage to the second permittee</u> where the named insured expressly prohibited the first permittee from allowing others to drive the car. They are, one, <u>where the first permittee was riding in the car</u>, or was benefited by its operation, and two, where <u>the second permittee's driving was occasioned by an emergency</u> or a situation involving elements of urgency or necessity, benefiting the first permittee. Neither of these variations are applicable here, and we have in this case no occasion to consider their viability in this State.

289 Md. at 386 n.1 (emphasis supplied).

Just as neither of those ameliorating circumstances was present in the <u>Bond</u> case, so too was neither present in this case. We have already discussed at length the dispositive fact that Karen, the first permittee, was not present in the Subaru Legacy when the accident occurred.

## An Inconvenience Is Not An Emergency

Coverage was foreclosed for yet a second reason. The appellant has not advanced an argument that Karen and Abdulkhalek were responding to an emergency when she, incapacitated by Lupus, sent him in the Legacy to pick up their children at school. The testimony of Alan Dwyer, Karen's father, would have obliterated any such argument had it been made. In terms of whether the school pick-up constituted any arguable emergency, one of several factors that might be pertinent, Alan Dwyer was asked on deposition what would ordinarily happen if and when Karen could not herself pick the children up. He replied that they would simply walk home, because home was but two blocks from school.

> Q     If on this day there – I may have already asked this and you may have told me. If Karen calls you on the day of this accident and says, "I cannot pick up the kids," and from her position Mr. Khalek is there to drive

- 15 -

the vehicle, but he would not be able to do it, what alternatives would have been available to pick up the children?

A      Walk.

Q      Who walk?

A      The kids walk home.

Q      How close is Saint Ambrose to your home?

A      About two blocks.

Q      Can you go from Saint Ambrose to your home without ever getting onto 202?

A      Yes.

Q      Is it within your community?

A      Yes

Q      Do you need to be on 202 to even get to Saint Ambrose from your home?

A      No.

(Emphasis supplied).  An inconvenience is not an emergency.

## The Use Must Be For The Designated Purpose

Even when the cast of characters is unobjectionable, the plot itself must still pass muster. The mere fact that the first permittee is present in the insured vehicle does not, in and of itself, extend the coverage of the policy to a second permittee who is driving at the request of the first permittee.  The use of the vehicle must still be for the specific purpose for which the permissive use was granted by the named insured in the first instance.

- 16 -

The opinion of this Court in <u>Liberty Mutual Insurance Co. v. Maryland Automobile Insurance Fund</u>, 154 Md. App. 604, 841 A.2d 46 (2004), is squarely on point. The named insured in that case received a telephoned request from his ex-wife, asking if their son could pick her up in the family car and drive her to work. The named insured felicitously acquiesced. He instructed the son, the first permittee, to use the car to drive the mother to work, but then to bring the car back. There were no further instructions given.

On his way to pick his mother up, the son gratuitously picked up a friend, Leo Stevenson. He then picked his mother up and delivered her to her place of work. After dropping the mother off, however, the pair decided to visit a mutual friend in Washington. Because the son did not know his way around the neighborhood, he asked Stevenson to drive the car. Stevenson thus became a second permittee. Stevenson, while driving, struck a parked truck which was propelled forward into a pedestrian.

The opinion for this Court by Judge (now Chief Judge) Krauser pointed out the scope of the permitted use granted by the named insured had been exceeded in two respects. Although the father had not expressly instructed his son on this occasion that no one but he should drive the car, there was a long-term understanding between father and son to that effect.

> There was ... ample evidence presented that, at the time that Stevenson was operating the covered vehicle, <u>there was</u>, as the circuit court put it, <u>a "mutual understanding" between father and son "that the driving would be restricted to the son when the car was lent to him."</u>

154 Md. App. at 611 (emphasis supplied).

The use of the vehicle exceeded the scope of the permission granted in yet a second respect. Judge Krauser pointed out:

> Because Drewery, Jr. was prohibited from allowing others to drive his father's vehicle, and because the vehicle was on the way back from an unauthorized detour when the accident occurred, Stevenson was not covered by the MAIF policy. Moreover, as we shall see, appellant's claim that the court erroneously relied on Bond and not Kornke in deciding this case is without merit, as it is Bond which is applicable to the instant case and Kornke which is distinguishable from it.

154 Md. App. at 612-13 (emphasis supplied).

Our opinion was very clear that the scope of a permitted use is a factor that will not be lightly ignored nor loosely interpreted.

> Even though Stevenson was driving because he reportedly knew the D.C. area better than Drewery, Jr., the operation of Drewery, Sr.'s car was not "for a purpose germane to the permission granted." There is no dispute that Drewery, Jr. was given permission to use the car only for the purpose of taking his mother to work. After completing that task, Drewery, Jr. and Stevenson decided, without consulting Drewery, Sr., to continue on into the District of Columbia to pick up Stevenson's cousin. Since Drewery, Jr. was not granted permission to use the car for any other purpose than to take his mother to work, the use of the car at the time of the accident was outside of the scope of the permission granted. Therefore, the circuit court did not err in finding that Stevenson was not covered under the MAIF policy.

154 Md. App. at 616 (emphasis supplied). See also American Home Assurance Co. v. Erie Insurance Exchange, 252 Md. 116, 121-22, 248 A.2d 887 (1969) (The accident occurred two and one-half hours after the driver borrowed it for a trip that was not to have taken more than 45 minutes, and the permittee had not yet picked up his wife which was his intended purpose.); Cohen v. American Home Assurance Co., 255 Md. 334, 349, 258 A.2d 225

- 18 -

(1969) (The mother-owner gave the car keys to her son with the understanding that a friend, not the son, would drive. When the son drove the car, that was not within the scope of the permission granted by the mother.); Goodwin v. Home Indemnity Co., 255 Md. 364, 367, 258 A.2d 220 (1969) (The permission granted to the permittee was for a repair pick up on Saturday morning, "not a Friday night (or early Saturday morning) escapade," which occurred.).

A trip to the Exxon station in this case, for whatever purpose, was not within the scope of a two-block trip to a school to pick up two children. A deviation is a deviation, be it large or small.

### How To Think About Grants of Permission

In analyzing the coverage of the typical omnibus clause, the phrase "second permittee" has been a two-edged sword, with unquestioned pluses but also troublesome minuses. It conveniently identifies the status of one who takes the wheel at the behest of a first permittee and it helps to distinguish a second permittee's more restricted permissive scope (generally limited to operating the car) from the broader discretionary scope typically enjoyed by a first permittee.

On the other hand, the phrase can be an analytic snare. Because of their parallel structures, there is an almost hypnotic impulse to analogize "second permittee" to "first permittee." Those who write law school examination questions might even dream of a third permittee or, yea perchance, a fourth. It is a treacherous frame of mind to slip into, however,

because the two (or three or four) permissive phenomena are not truly analogous. We may not attribute the rules that govern and the characteristics of the first grant of permission to the second, because the second is no mere second-generation replication of the first. It is a distinct and more narrow grant with tighter rules and more limited characteristics of its own.

Under an omnibus clause, the exclusive creator of a permitted use of a vehicle is the named insured. It is he who establishes the purpose for which a use is given. It is he, therefore, who establishes the limits on the range or scope of such use. It is the first permittee who is the exclusive beneficiary of the permissive use. The scope of the permitted use is bounded by what will benefit or serve the purposes of that first permittee. The use is not an independent entitlement which the first permittee can receive and then assign or pass on, in turn, to a second permittee. As a mere grantee of the use, the first permittee cannot alter or modify the purpose for which it was granted or create a new purpose. For any subsequent use of the vehicle to come under the coverage of the omnibus clause, such use must be in the service of the purpose for which the grant of the use was originally made.

Although the use of the ordinals "first" and "second" inevitably suggest a sequence, we actually deal with a one-step process and not a two-step process. It is not the case that a grant of a permissive use is made by the named insured to the first permittee and later regranted from the first permittee to the second permittee in a second transfer of permission. It is rather the case that the grant is made on a single occasion from the named insured to the first permittee and, implicitly, because the first permittee need not drive the car himself, to

whatever agents or servants the first permittee may subsequently procure to do the driving for him. The grant may well have contemplated such a possible agency from the beginning.

When the first permittee designates an agent to drive him or her some place, that is not a second grant of a permissive use. It is only an incident or implementation by the first permittee of the original grant of the use. The so-called "second permittee" is simply an agent for the limited purpose of driving. The very term "second permittee" is, to be sure, very convenient. It may well be indispensable. It nonetheless requires sensitive handling and vigilant awareness of the danger of over-analogizing.

## Conclusion

Under the terms of the omnibus clause in this case, the coverage of the policy did not extend to Abdulkhalek, the ostensible second permittee, who was expressly prohibited from driving the car, who nonetheless did so without the necessary presence of the first permittee, and who in any event exceeded the scope of any even implicitly permitted use.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**