McDonald, J.
Automobile insurance policies in Maryland cover persons named in the policy — the named insured — with respect to the vehicles identified in the policy. Coverage under a policy also can extend to some extent to other vehicles driven by the named insured and to other persons who drive the vehicles identified in the policy. The part of the policy that extends coverage to other persons is sometimes called the “omnibus clause.” In particular, an omnibus clause may extend insur *387 anee coverage to drivers who use a vehicle with the permission of the named insured.
But what if the person with permission to use the car — the “first permittee” — enlists someone else to drive the car for the benefit of the first permittee? And what if that driver has previously been forbidden to drive the car by the named insured? Under what circumstances might an omnibus clause extend coverage to that driver as a “second permittee”?
Prior appellate decisions have identified alternative scenarios under which an omnibus clause covers the operation of the vehicle on behalf of, and for the benefit of, a first permittee by a driver other than the first permittee. We hold that the omnibus clause in the policy at issue in this case would extend coverage to a second permittee who drove the car for the benefit of the first permittee at her request, regardless of whether the first permittee happened to be physically in the car at that time. The omnibus clause did not extend coverage to that driver, however, when he operated the car for a purpose other than that requested by the first permittee.
I
Background
Automobile Insurance — Omnibus Clauses
Maryland’s compulsory motor vehicle insurance law makes automobile liability insurance a prerequisite to the registration of a motor vehicle in Maryland. Maryland Code, Transportation Article, §§ 17-103, 17-104. The law is designed to ensure that “those who own and operate motor vehicles registered in the State are financially able to pay compensation for damages resulting from motor vehicle accidents.” Enterprise Leasing Co. v. Allstate Insurance Co., 341 Md. 541, 549, 671 A.2d 509 (1996) (citation and internal quotation marks omitted). The public policy underlying the law “is to give innocent third parties a source of private sector insurance funds from which to obtain compensation for their injuries.” Enterprise Leasing Co., 341 Md. at 548-49, 671 A.2d *388 509. While insurance is linked to the registration of a vehicle and the law thus may be characterized as “vehicle-based,”[1] policies typically provide coverage for specified individual drivers, sometimes referred to as the “named insured.”
Liability coverage is extended to certain other drivers of the insured vehicle by virtue of a policy provision known as the “omnibus clause.”[2] Although there is no statutory requirement that a policy include an omnibus clause, most policies contain one. A. Janquitto, Maryland Motor Vehicle Insurance (3d ed.2011), § 7.7 at 195. The clause usually extends coverage to designated categories of potential drivers of the insured vehicle, including family members and permissive users of the vehicle. Id. at 196, 671 A.2d 509. The extent to which a permissive user may authorize another individual to drive the vehicle and be covered by means of the omnibus clause of the policy has generated a number of reported appellate decisions. The facts of this case pose yet another factual scenario.

The Car, the Driver, and the Policy

At the time of the accident in February 2008 giving rise to this case, Respondents Alan and Maureen Dwyer lived in Cheverly in Prince George’s County. Also resident in their household was their 34-year old daughter, Karen Dwyer, and her three children. The Dwyers provided support for Karen, who was disabled as a result of lupus, and their grandchildren, two of whom attended a school a few blocks from their residence. At the time, Karen was in a relationship with the father of her children, Ameen R. Abdulkhalek.
Alan Dwyer owned a 1995 Subaru Legacy. Karen Dwyer was the primary driver and had unrestricted use of the vehicle. Mr. Dwyer, however, had forbidden Mr. Abdulkhalek to drive the car. The Subaru was insured by a policy in Mr. *389 Dwyer’s name with Respondent Erie Insurance Exchange (“Erie”). That policy included an omnibus clause in the section on liability coverage that read as follows:
“Anyone we protect” means:
1. “you” or any “relative” using an “auto we insure,”
2. any person using, or any person or organization legally responsible for the use of, an “owned auto we insure.” This use must be with “your” permission unless the use is by a “relative;” and
3. any person or organization legally responsible for the use, by “you” or a “relative,” of any “nonowned auto.” This protection applies only if the person or organization does not own or hire the vehicle being used.
(boldface in original). The policy elsewhere defined “you” and “your” as referring to the named insured identified in the declarations page of the policy. The policy defined the term “relative” to include a resident of the household related to the named insured by blood, marriage or adoption.

The Accident

On the afternoon of February 11, 2008, Karen Dwyer had fallen ill when it was time to pick up two of her children from school. Instead of going to the school for the children as she usually did, she gave Mr. Abdulkhalek the keys to the Subaru and asked him to retrieve the children — a two-minute drive from the home. According to Mr. Abdulkhalek, he then drove to a gas station on Route 202 before heading to the school. The record does not reveal the reason for Mr. Abdulkhalek’s trip to the gas station. According to Mr. Abdulkhalek, after stopping at the gas station, he made a U-turn on Route 202 and, as he approached a stoplight, collided with a car occupied by Petitioners David and Claudia Payne. Had he driven straight to the school, he would not have been on Route 202.

The Litigation

In October 2010, the Paynes filed a tort action against Mr. Abdulkhalek, the Dwyers, and the Paynes’ own automobile insurer, GEICO General Insurance (with respect to unin *390 sured/underinsured motorist benefits). Case No. CAL 10-34352 (Prince George’s County Circuit Court). A question arose as to whether any liability of Mr. Abdulkhalek was covered by the Erie insurance policy relating to the Subaru. On November 23, 2011, the Paynes filed in the Circuit Court for Prince George’s County a complaint for declaratory judgment naming the Dwyers, Mr. Abdulkhalek, Erie, and GEICO as defendants and seeking a determination as to whether coverage was afforded to Mr. Abdulkhalek by the Erie policy in connection with the accident. Case No. CAL 11-34091 (Prince George’s County Circuit Court). The complaint expressly invited the court to resolve the declaratory judgment action on cross motions for summary judgment. The tort action was stayed pending resolution of the insurance coverage question in the declaratory judgment action.
The Paynes and Erie filed cross-motions for summary judgment in the declaratory judgment action. After a hearing, the Circuit Court determined that Mr. Abdulkhalek’s use of the vehicle was not covered under the omnibus clause of the policy. Based on that conclusion, the court granted Erie’s motion for summary judgment, and denied the Paynes’ motion for summary judgment.
The Pasmes appealed, and the Court of Special Appeals affirmed. 216 Md.App. 39, 84 A.3d 212 (2014). The Court concluded that “the coverage of the policy did not extend to [Mr.] Abdulkhalek, the ostensible second permittee, who was expressly prohibited from driving the [Subaru], who nonetheless did so without the necessary presence of the first permit-tee, and who in any event exceeded the scope of any even implicitly permitted use.” Id. at 58, 84 A.3d at 223. The Paynes filed a petition for a writ of certiorari, which this Court granted.
II
Discussion

Standard of Review

The Circuit Court decided this case on cross motions for summary judgment. Under the Maryland Rules, a circuit *391 court may grant a motion for summary judgment if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2-501(f). The court is to consider the record in the light most favorable to the non-moving party and consider any reasonable inferences that may be drawn from the undisputed facts against the moving party. Mathews v. Cassidy Turley Maryland, Inc., 435 Md. 584, 598, 80 A.3d 269 (2013). When parties file cross motions for summary judgment, the court must assess each motion on its own merits. MAMSI Life & Health Ins. Co. v. Callaway, 375 Md. 261, 278, 825 A.2d 995 (2003). Although the court is considering the same record, it might draw different inferences from the same basic facts in considering the opposing motions. It is, of course, possible that a court would deny both motions in light of the different inferences drawn from the same facts. In other words, the resolution of cross motions for summary judgment is not a zero sum game. Both combatants may remain standing.
Because a circuit court’s decision to award summary judgment turns on a question of law, not a dispute of fact, an appellate court is to review whether the circuit court was legally correct without according any special deference to the lower court’s legal conclusions. Mathews, 435 Md. at 598, 80 A.3d 269. We thus consider the legal question at issue anew — or, in the Latin phrase, de novo.

Whether this Case can be Decided on Summary Judgment

In this case the basic facts are undisputed and the legal question at issue in this declaratory judgment action may be susceptible to resolution on summary judgment, unless contrary inferences drawn from those facts would require denial of both motions for summary judgment.
It is clear that Karen Dwyer’s use of the Subaru would be covered under the omnibus clause as she was both a relative resident in the household of the named insured and also had general unrestricted permission from the named insured — her father — to use the vehicle. But Mr. Abdulkhalek was neither *392 a named insured in the Erie policy nor a “relative,” as defined in that policy. Thus, he would only be covered under the policy if he came within the permissive use provision of the omnibus clause. Erie asserts that Mr. Abdulkhalek is not covered under the permissive use provision for two reasons.[3]
First, it argues that an individual who is otherwise forbidden from driving an insured vehicle is only covered by the permissive use provision as a second permittee when the first permittee — Karen Dwyer, in this case — is physically in the vehicle at the time of the accident. There is no dispute that Ms. Dwyer was not in the vehicle when it collided with the Paynes’ car.
Second, even if there could be coverage of a second permit-tee without the presence of the first permittee in the vehicle, Erie argues that a second permittee must be driving the car for the benefit of the first permittee and that, in this case, Mr. Abdulkhalek’s trip to the gas station that resulted in his driving the car to the scene of the accident on Route 202 was not for the benefit of the first permittee. Accordingly, even if Karen Dwyer could bring Mr. Abdulkhalek within the scope of the omnibus clause as a second permittee by authorizing him to drive the car for her benefit, there was no coverage for his deviation from the task that she had assigned him.
Thus, one of the two bases that Erie offers for summary judgment in its favor turns on a basic fact about which there is no disagreement — whether Karen Dwyer was in the car at the time of the accident. The second reason turns more on what inferences may be drawn from the undisputed facts — whether Mr. Abdulkhalek was operating the car for the benefit of Ms. Dwyer at the time of the accident.

The Criteria for Coverage as a Second Permittee under the Omnibus Clause

Prior appellate decisions have identified alternative scenarios under which an omnibus clause covers the operation of the vehicle when a named insured authorizes another individual— *393 the “first permittee” — to use the car, but forbids or limits the operation of the car by others. While the reported decisions in which courts have found coverage have involved factual situations in which the first permittee was physically present in the car at the time of the accident, the test articulated in those decisions does not require the presence of the first permittee. Rather, the courts have stated a test in the disjunctive which requires either that the first permittee be in the car while it is being operated by the second permittee or that the second permittee drive the car with the authorization of the first permittee for the first permittee’s benefit. Three of the leading decisions state this disjunctive test as follows:
(1) Kornke
[Even if the named insured expressly prohibited a second permittee from use of the automobile] the law permits coverage [under the omnibus clause] because a) the original permittee was riding in the car with the second permittee at the time of the accident; or b) because the second permittee was serving some purpose or advantage of the first permittee when the accident occurred.
Maryland Indemnity Ins. Co. v. Kornke, 21 Md.App. 178, 196-97, 319 A.2d 603 (1974) (emphasis added) (citations omitted).[4]
(2) Federal Insurance Co.
The “general rule” that a permittee may not allow a third party to “use” the named insured’s car has generally been held not to preclude recovery under the omnibus clause where (1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee.
*394 Federal Ins. Co. v. Allstate Ins. Co., 275 Md. 460, 471, 341 A.2d 399 (1975) (quoting 7 Am.Jur.2d, Automobile Insurance, § 117 (1963)) (emphasis added).[5]
(3) Bond
[There are] two variations from the general rule denying coverage to the second permittee where the named insured expressly prohibited the first permittee from allowing others to drive the car. They are, one, where the first permittee was riding in the car, or was benefitted by its operation, and two, where the second permittee’s driving was occasioned by an emergency or a situation involving elements of urgency or necessity, benefitting the first permittee. Neither of these variations are applicable here, and we have in this case no occasion to consider their viabilityf.]
Bond v. Pennsylvania National Mutual Casualty Ins. Co., 289 Md. 379, 386 n. 1, 424 A.2d 765 (1981) (emphasis added).[6]
In each of the cases, the court recognized two alternative situations in which coverage would extend to operation of the *395 car by a person other than the first permittee — one where the first permittee is a passenger, though not driving the car, and a second in which the driver is operating the car for the benefit of the first permittee, even though the first permittee is not physically present in the car. See also Nationwide General Ins. Co. v. GEICO, 81 Md.App. 104, 115, 566 A.2d 1117 (1989), cert. denied, 319 Md. 72, 570 A.2d 864 (1990) (noting that Kornke and Bond alluded to two tests for coverage of a “second permittee” under the omnibus clause, only one of which involves the presence of the first permittee).
The rationale for this disjunctive test would appear to be as follows. An omnibus clause that contemplates that the named insured may authorize the “use” of the vehicle by a first permittee extends coverage to a second permittee only if the use of the car is consistent with the scope of permission granted to the first permittee.[7] The presence of the first permittee in the car at the time it is operated by another driver is an indication that it is being operated for the benefit of the first permittee — i.e., used by the first permittee, even if driven by someone else. One case has alluded to the notion that the first permittee remains the “master of the ship”[8] *396 even if the first permittee is not operating the car. However, there does not appear to be any requirement that the first permittee be actively directing the operation of the car — in Komke, the first permittee was asleep in the car at the time of the accident. If the first permittee is not physically present in the car, it must be clear that the driver is operating the vehicle for the benefit of the first permittee — within the scope of the first permittee’s authorized use of the car — in order to have coverage as a second permittee.[9]
Erie argues that the two tests should be combined and considered as conjunctive rather than disjunctive. Erie would rewrite each of the passages quoted above to replace the word “or” in each instance with the word “and.” But a little word can make a big difference. Under Erie’s position, an innocent injured third party would have no recourse against the insurance policy that covered the car that caused the accident, even if the driver was driving the car at the request of, and for the benefit of, an authorized user of the vehicle. Rather, the innocent injured party would have to seek compensation from the driver alone, whatever uninsured motorist benefits the injured party might happen to have, or the uninsured component of the Maryland Automobile Insurance Fund. In our view, this is at odds with the public policy underlying the *397 compulsory insurance law and with the consistent interpretation of omnibus clauses such as the one in the Erie policy.[10]

Application to Mr. Abdulkhalek’s Trip

The omnibus clause in the Erie policy contemplates that the named insured may authorize the “use” of the vehicle by others. The undisputed facts are that Mr. Dwyer had granted Karen Dwyer — the first permittee — unrestricted use of the Subaru. Indeed, as a relative of the named insured who lived in his household, Karen Dwyer was covered under the omnibus clause in the Erie policy even without Mr. Dwyer’s explicit permission. Thus, there is no question that it was within the scope of Karen Dwyer’s permitted use of the car to use it to pick up her children from school.
On the day of the accident, Karen Dwyer asked Mr. Abdulkhalek to pick up two of their children from an elementary school two blocks from the Dwyer house. Mr. Abdulkhalek, however, went elsewhere — to a gas station that led him to the intersection where he collided with the Paynes’ car. On this record, the purpose of the trip to the gas station is a bit of a mystery, but there is no indication that it was for the benefit of Karen Dwyer. One cannot say that, on the basis of the undisputed facts, there was coverage of Mr. Abdulkhalek under the omnibus clause as a matter of law. The Circuit *398 Court was clearly correct in its decision to deny the Paynes’ motion for summary judgment.
As noted above, the fact that the Paynes’ motion for summary judgment fails does not necessarily mean that Erie’s opposing motion for summary judgment succeeds. In assessing the Paynes’ motion, we indulged all reasonable inferences in favor of Erie. One might reasonably infer that a trip to a gas station is inconsistent with carrying out a request to take a two-block trip to an elementary school to pick up children. But in assessing Erie’s motion, the winds blow in the opposite direction and all inferences are to be taken in favor of the Paynes.[11] Nevertheless, the inferences must be reasonable and not simply speculation.
Although Mr. Abdulkhalek potentially had coverage under the omnibus clause as a second permittee, he did not have the same discretion as Karen Dwyer, the first permittee, to use the car as he pleased. In her absence, he was covered only to the extent that he drove for her benefit. In the end, what we know from this record is that Mr. Abdulkhalek was asked to drive to the elementary school for the benefit of Karen Dwyer, the first permittee (there is no suggestion in the record before us that she sent him on any other errand); that he drove to a gas station instead of the elementary school; and that he was in an accident shortly after he left the gas station. We might speculate that he went to the gas station to benefit Ms. Dwyer; that even if it was not for the benefit of Ms. Dwyer, he had returned to that purpose when the accident intervened; or that the apparently circuitous route he was taking to the school was the best he knew. The problem is that we cannot root any of these musings in the record before us. They do not qualify as reasonable inferences that allow the Paynes to escape summary judgment. We thus agree with the second alternative holding of the Court of Special Appeals that this *399 deviation from his assigned task took Mr. Abdulkhalek outside the coverage of the omnibus clause. See 216 Md.App. at 54-58, 84 A.3d 212.
Ill
Conclusion
An omnibus clause in an automobile insurance policy that extends liability coverage to a permissive user of an insured vehicle also encompasses a driver who operates the vehicle for the benefit of an individual who has permission from the named insured to use the car. Coverage does not extend to that driver if, as in this case, the driver deviates from the purpose for which he was authorized to drive the car for the benefit of first permittee. We thus hold that the Circuit Court properly granted summary judgment in favor of Erie.
Judgment of the Court op Special Appeals Affirmed. Costs to be Paid by Petitioner.
HARRELL, BATTAGLIA, and WATTS, JJ, concur.

. A. Janquitto, Maryland Motor Vehicle Insurance (3d ed.2011), § 2.8 at 38.

. Although the term "omnibus” derives from the dative plural of omnis, the Latin word for “all,” an omnibus clause does not cover all potential drivers of the insured vehicle, as this case illustrates.

. Alan and Maureen Dwyer adopt Erie’s view in their brief.

. In Kornke, the named insured gave his teenage son permission to drive the car, but forbade its use by others. When the car developed an electrical problem during one trip, the son repaired the problem but suffered an electrical shock, asked one of his passengers to take over the wheel, and an accident ensued. The court found that the insurance policy extended coverage to the driver as a second permittee under both tests set forth in the passage quoted in the text. 21 Md.App. at 197, 319 A.2d 603.

. In Federal Insurance, the named insured' — an automobile delivery-company — had contracted with the first permittee to drive a car from New York to Florida. The first permittee had recruited a couple friends to accompany him and one of the passengers took a turn driving the car part way through the trip, during which there was an accident. Applying the two tests quoted in the text, this Court held that the friend was covered as a second permittee because, not only was the first permittee in the car at the time of the accident, but in taking a turn driving, the friend was also serving the purposes of both the named insured and the first permittee. 275 Md. at 472, 341 A.2d 399.

. In Bond, the named insured allowed her daughter, the first permittee, exclusive use of the car. On the day of the accident, the daughter picked up two friends to go to a dance in Essex. En route to the dance, they stopped at a bar, and the daughter left the car with her friends while she went off with a boyfriend. One of her friends then drove the car to a nearby carnival and was involved in an accident on the return trip. This Court held that the circuit court properly found that the car was not being used by anyone expressly or impliedly authorized to drive it at the time of the accident. In a footnote, the Court noted that the friend's operation of the car was not covered by the omnibus clause under any of the criteria in the passage quoted in text above. 289 Md. at 386 n. 1, 424 A.2d 765.

. It has long been held that permission to “use” a vehicle encompasses more than permission to drive it oneself. See Hardware Mutual Casualty Co. v. Mitnick, 180 Md. 604, 607, 26 A.2d 393 (1942) (“use” in an omnibus clause includes "making use of it by riding while driven by another”); Melvin v. American Automobile Insurance Co., 232 Md. 476, 478-79, 194 A.2d 269 (1963) ("actual use” not limited to operation of vehicle “where the operator is the agent or servant of another and subject to his immediate and present direction and control”). When the named insured grants permission to the first permittee for a limited purpose, the same limitations also constrain the use of the vehicle by a second permittee. See Liberty Mutual Ins. Co. v. Maryland Automobile Insurance Fund, 154 Md.App. 604, 616, 841 A.2d 46 (2004) (when named insured allowed his son — the first permittee — to use insured vehicle for the purpose of transporting his mother, omnibus clause did not extend coverage to a friend whom the son allowed to drive the car during a detour that the two took to Washington, D.C., without the mother).

. Mitnick, 180 Md. at 607, 26 A.2d 393.

. The concurring opinion expresses a concern that, absent a requirement that the first permittee be present in the car, there will be a “slippery slope” leading to coverage of "third, fourth, or even fifth permittees.” Concurring op. at pp. 416-17 & n. 4, 112 A.3d at 504-05 & n. 4. It is true that, under the second alternative of the Kornke/Federal Insurance/Bond formulation, there is the potential that different individuals could drive the vehicle at the direction of the first permittee, but in order to have coverage under the omnibus clause, each such driver would have to be operating the vehicle for the benefit of the first permittee — the individual whose “use” of the vehicle was authorized by the named insured. Each such driver would thus be another second permittee — -just as there may be multiple individuals who could drive the vehicle at the direction of the first permittee with the first permittee in the car. In both cases, the driver is a second permittee covered by the omnibus clause. The imagined “third, fourth or fifth permittee” is simply an alternative second permittee, as there is only one driver at any particular time. There is no "slippery slope.”

. The Court of Special Appeals adopted Erie’s position as one of its alternative reasons for affirming summary judgment in Erie’s favor. The court’s scholarly opinion draws an analogy to a classic double play combination of the Chicago Cubs, in which a baseball passed from shortstop Joe Tinker to second baseman Johnny Evers to first baseman Frank Chance to complete a double play. 216 Md.App. at 40-41, 84 A.3d 212. In other words, much as the baseball had to physically end up with Chance for the batter to be called out, in the view of the Court of Special Appeals there would be no insurance coverage for a second permittee under an omnibus clause unless the first permittee is physically in the car while it is driven by the second permittee. Under our opinion, a more apt analogy in this case might be the infield fly rule, under which there would be no need for Tinker — or Evers — to get the ball to Chance to have the batter called out. Nor is there any need to belabor the analogy. More information on the infield fly rule can be found at Note, The Common Law Origins of the Infield Fly Rule, 123 U. Penn. L.Rev. 1474 (1975).

. Cross motions for summary judgment may be contrasted to a bench trial, such as occurred in Liberty Mutual Ins. Co. v. Maryland Automobile Insurance Fund, 154 Md.App. at 608, 841 A.2d 46, in which a circuit court may make factual findings and need not indulge inferences in favor of one party or the other.